[No. 5638. Decided October 10 1905.]

# W. H. KNEELAND et al., Appellants, v. HARRIET KORTER, Respondent.[1]

PUBLIC LANDS—LANDS BELOW HIGH TIDE—GRANTS—VALIDITY—
POWER OF CONGRESS. The United States had the power to grant to a
railroad corporation, for some purposes at least, lands below high
water mark of tide waters of the territory of Washington; and such
a grant, not being void, should be upheld when no facts are shown to
render it voidable.

SAME—CONSTITUTIONAL DISCLAIMER—APPLICATION TO SUBSEQUENT
PATENT—CONSTRUCTION. The constitutional disclaimer of the state in
and to all tide lands patented by the United States, applies to lands
below high water mark and within the meander line of the govern-
ment surveys of land granted by the United States to a railroad cor-
poration prior to the admission of the state into the Union, although
the patent therefor did not issue until thereafter, where the railroad
company had, by the filing of its map of definite location, and com-
pleting its road, become entitled to the patent prior to the adoption
of the constitution (MOUNT, C. J., RUDKIN and FULLERTON, JJ., dis-
senting).

SAME—OFFICIAL SURVEYS—COLLATERAL ATTACK. The official sur-
veys of the government are not open to collateral attack in an action
at law between private parties, and the patent must be held to be
made with reference to such surveys.

SAME—PRESUMPTION—SURVEYS—MISTAKE AS TO MEANDERS. Where
the meander line of the government survey was run years before the
adoption of the constitution, and included tide lands below high
water mark, it must be presumed that the constitutional disclaimer
of title to tide lands patented by the government, had reference to
the meander lines run, as establishing the line of high water mark,
and not that the tide lands were included within the patent by mis-
take (MOUNT, C. J., RUDKIN, and FULLERTON, JJ., dissenting).

Appeal from a judgment of the superior court for Thurs-
ton county, Linn, J., entered March 11, 1905, dismissing
an action of ejectment, upon sustaining a demurrer to the
complaint. Reversed.

[1] Reported in 82 Pac. 608.

*Vance & Mitchell (Israel & Mackay,* of counsel), for appellants. A grant made by Congress takes effect immediately, unless words of limitation are present preventing it, and the courts incline to carry out the intention of Congress as to the time of vesting title. 9 Am. & Eng. Ency. Law (1st ed.), 56; *Schulenberg v. Harriman,* 21 Wall. 44, 22 L. Ed. 551; *Winona etc. R. Co. v. Barney,* 113 U. S. 618, 5 Sup. Ct. 606, 28 L. Ed. 1109; *Missouri etc. R. Co. v. Kansas etc. R. Co.,* 97 U. S. 491, 24 L. Ed. 1095; *St. Paul etc. R. Co. v. Greenhalgh,* 26 Fed. 563; *Johnson v. Ballou,* 28 Mich. 379; *Northern Pac. R. Co. v. Majors,* 5 Mont. 111, 2 Pac. 322. The grant to the railroad company was a present grant upon conditions subsequent, which could only be defeated by breach of condition and divesture of title thereupon by proper legal proceedings on behalf of the United States. *United States v. Curtner,* 38 Fed. 1; *United States v. McLaughlin,* 30 Fed. 147; *Buttz v. Northern Pac. R. Co.,* 119 U. S. 55, 7 Sup. Ct. 100, 30 L. Ed. 330. A grant *in praesenti* is of the same dignity as a patent and is a contract executed. *Fletcher v. Peck,* 6 Cranch 87, 3 L. Ed. 162. Such grant vests an indefeasible and irrevocable title. *Terrett v. Taylor,* 9 Cranch 43, 3 L. Ed. 650; *Strother v. Lucas,* 12 Peters 410, 9 L. Ed. 1137; *Courtright v. Cedar Rapids etc. R. Co.,* 35 Iowa 386; *Wilkinson v. Leland,* 2 Peters 627, 7 L. Ed. 542. A legislative grant is the highest muniment of title and is not strengthened by a subsequent patent to the same land; the title relates back to the act. *Whitney v. Morrow,* 112 U. S. 693, 28 L. Ed. 871, 5 Sup. Ct. 333; *Wright v. Gish,* 94 Mo. 110, 6 S. W. 704; *Mining Co. v. Consolidated Min. Co.,* 102 U. S. 167, 26 L. Ed. 126; *Starks v. Starrs,* 6 Wall. 402, 18 L. Ed. 925. The constitution should be construed in the ordinary sense in which its words are used and understood by the public. Cooley, Constitutional Lim., 71; Endlich, Interpretation of Statutes, 526. The constitutional disclaimer as to the tide lands is as broad as equity would apparently construe it, and is really a confirmatory grant. *Scurry v. Jones,* 4 Wash.

468, 30 Pac. 726; *Cogswell v. Forrest,* 14 Wash. 1, 43 Pac. 1098; *Deseret Salt Co. v. Tarpey,* 142 U. S. 241, 12 Sup. Ct. 158, 35 L. Ed. 999; *Leavenworth etc. R. Co. v. United States,* 92 U. S. 733, 23 L. Ed. 634; *Rutherford v. Greene,* 2 Wheat. 196, 4 L. Ed. 218; *Wisconsin Cent. R. Co. v. Price County,* 133 U. S. 496, 10 Sup. Ct. 341, 33 L. Ed. 687; *Shively v. Bowlby,* 152 U. S. 1, 14 Sup. Ct. 548, 33 L. Ed. 381; *Prosser v. Northern Pac. R. Co.,* 152 U. S. 59, 14 Sup. Ct. 528, 38 L. Ed. 352; *Langdeau v. Hanes,* 21 Wall. 521, 22 L. Ed. 606; *Washougal etc. Transp. Co. v. Dalles etc. Nav. Co.,* 27 Wash. 490, 68 Pac. 74.

*H. J. Snively* and *Troy & Falknor,* for respondent. The United States had no power to convey the tide lands held in trust for the state. *Pollard v. Hagan,* 3 How. 212, 11 L. Ed. 565; *Eisenbach v. Hatfield,* 2 Wash. 236, 26 Pac. 539, 12 L. R. A. 632. The constitutional disclaimer was not intended to apply to tide lands in navigable waters or to unpatented lands. *Baer v. Moran Bros. Co.,* 2 Wash. 608, 27 Pac. 470. Grants on navigable tidal waters only extend to high water mark. *Hardin v. Jordan,* 140 U. S. 371, 11 Sup. Ct. 808, 35 L. Ed. 428; *Craigin v. Powell,* 128 U. S. 691, 9 Sup. Ct. 203, 32 L. Ed. 566.

Root, J.—Appellants brought this action to recover possession of eleven acres of tide land, constituting a portion of a 51.31 acre tract of land, surveyed, platted, and designated by the United States government as Lot Three, Section Thirteen, Township Nineteen, North, of Range Three, West, Willamette Meridian, in Thurston county, Washington. They claim title through various mense conveyances from the Northern Pacific Railroad Company, which received a patent to said lot three in December, 1894, pursuant to an act of Congress, passed in 1864, granting to said railroad company the odd numbered sections of public land within a certain distance from the line of railway to

be constructed by said company. It is conceded that the railroad company completed the construction of that portion of the road affecting this locality, in 1884. The filing of the map of definite location was, of course, prior thereto. Respondent having taken possession of said tide lands, this action was commenced and a complaint setting forth the foregoing facts served and filed. A general demurrer was interposed by respondent, and sustained by the trial court. Appellants electing to stand upon their complaint, the action was dismissed. From this judgment of dismissal, appeal is taken to this court.

It is conceded that the only question involved is as to the validity of appellants' title to the said premises, which lie between the lines of ordinary high and ordinary low water marks. Respondent contends that, as the tract in controversy is situated below "high tide line," on the shores of Puget Sound, an arm of the sea, the United States government had no power to dispose of it to the railway company, or at all; but could, and did, hold said tide land in trust for the state of Washington. Appellants assert the right of the United States government to grant such lands prior to the time Washington became a state. Appellants further contend that, if the United States government had no authority to grant these lands, yet, having assumed to do so, its grantees, and their successors in interest therein, can hold the same by virtue of § 2, art. 17 of the state constitution, which reads as follows:

"The State of Washington disclaims all title in and claim to all tide, swamp, and overflowed lands patented by the United States; Provided, The same is not impeached for fraud."

Respondent answers this contention by the claim that this section of the constitution does not apply to this character of lands; or, if it does, that it can apply only to lands for which patent had already issued at the time of the adoption of the state constitution. Appellants urge that the

virtue of a patent dates from the time of the inception of the grantee's rights in the land, and not merely from the time of the patent's issuance.

We think the complaint shows appellants to have a good title to the tide lands in question. Congress has power, at least for some purposes, to grant lands below high water mark, where the same are situated within the geographical limits of a territory, although that power be no longer retained when such territory becomes a state. The supreme court of the United States, in an elaborate and carefully considered opinion by Mr. Justice Gray, in *Shively v. Bowlby,* 152 U. S. 1, 14 Sup. Ct. 548, 38 L. Ed. 331, among other things, said:

"Notwithstanding the *dicta* contained in some of the opinions of this court, already quoted, to the effect that Congress has no power to grant any land below high water mark of navigable waters in a Territory of the United States, it is evident that this is not strictly true. Chief Justice Taney, in delivering an opinion already cited, after the subject had been much considered in the cases from Alabama, said: 'Undoubtedly Congress might have granted this land to the patentee, or confirmed his Spanish grant, before Alabama became a state.' *Goodtitle v. Kibbe,* 9 How. 471, 478. . . . By the Constitution, as is now well settled, the United States, having rightfully acquired the Territories, and being the only government which can impose laws upon them, have the entire dominion and sovereignty, national and municipal, Federal and state, over all the Territories, so long as they remain in a territorial condition. *American Ins. Co. v. Canter,* 1 Pet. 511, 542; *Benner v. Porter,* 9 How. 235, 242; *Cross v. Harrison,* 16 How. 164, 193; *National Bank v. Yankton County,* 101 U. S. 129, 133; *Murphy v. Ramsey,* 114 U. S. 15, 44; *Mormon Church v. United States,* 136 U. S. 1, 42, 43; *McAllister v. United States,* 141 U. S. 174, 181. . . . The United States, while they hold the country as a Territory, having all the powers both of national and of municipal government, may grant, for appropriate purposes, titles or rights in the soil below high water mark of tide waters."

In the case of *Prosser v. Northern Pac. R. Co.*, 152 U. S.
59, 14 Sup. Ct. 528, 38 L. Ed. 352, the same court, in
passing upon the identical land grant now under considera-
tion, said:

"It may be admitted that the Congress of the United
States, while the present State of Washington was a Terri-
tory, had the power, in chartering a corporation to construct
and maintain a railroad from Lake Superior to the Pacific
Coast, to grant to the corporation such title or rights in
lands below high water mark of tide waters of the Terri-
tory, as might be necessary or convenient for the building,
maintenance, use and enjoyment of such structures as might
be required for commerce and transportation on the railroad
and by sea, and for transferring goods and passengers be-
tween the railroad and sea-going vessels. *Shively v. Bowlby,*
just decided, *ante* 1; *In re New York Central & Hudson
River Railroad*, 77 N. Y. 248; *In re Staten Island Rapid
Transit Co.*, 103 N. Y. 251."

Under these decisions, we cannot hold the grant of these
lands void, and no facts are now shown which render it
voidable. But as to whether or not the United States gov-
ernment had power to, or as a matter of law did, grant and
convey the particular tide land in controversy here, it is not
necessary now to decide, as this case can be determined upon
another ground.

It is admitted that the United States government did issue
to the railroad company a patent covering this land. It was
not so issued until 1894; but the consideration, on account
of which it was issued, had been furnished many years be-
fore Washington became a state, and the railroad company
had been entitled to a patent ever since said time. When
our state constitution was adopted and we became a state,
it was known that the United States had in some instances
granted, or assumed to grant, certain tide lands lying below
high water mark. In order to prevent any controversy over
said lands, and to avoid disturbing rights claimed under
such conveyances, § 2, art. 17, of the state constitution was

adopted. While this section is in terms a disclaimer merely, yet it has been held by this court to be in effect a conveyance of the state's interest in these lands, and confirmatory of the government's grant thereof. In *Scurry v. Jones,* 4 Wash. 468, 30 Pac. 726, this court, speaking by Hoyt, J., used the following language:

"The language of § 2 of art. 17 is that 'the State of Washington disclaims all title in and claim to all tide, swamp and overflowed lands patented by the United States; provided the same is not impeached for fraud,' and fairly construed, we think it must be held to have, in effect, confirmed the patents which covered such lands. For, while it is true that the language used is not in form confirmatory, yet, when we take into consideration the situation of affairs, and the object to be accomplished by such disclaimer, we do not see how this object can be given force without construing the langauge used as substantially a grant to the patentees of the interest of the state in the land so situated. Under the law, as conceded by both parties, the lands had passed absolutely to the state, subject only to such clouds thereon as were caused by the same having been assumed to have been granted to private individuals by the United States. Under such circumstances, if the state disclaims all of its title to such lands, where the patents had been obtained without fraud, it certainly was for the benefit of some one, and it clearly could not have been for the benefit of the United States. . . . In our opinion, the interest of the state passed as fully to the grantees in such patents, or to those holding under them, as it would have done had there been express words of grant used in the constitution. Any other interpretation of the language used would deprive it of any beneficial force whatever."

In *Cogswell v. Forrest,* 14 Wash. 1, 43 Pac. 1098, this court, speaking by Dunbar, J., said:

"This is tide land patented by the United States and it is not impeached for fraud, and no matter whether the meander line or the body of water along which the meander line runs is the true boundary. The boundaries of this particular tract of land are settled by the grant in the plat and field notes. The land was granted according to the official

grant of the survey of such lands, and the plat itself and its notes, lines and descriptions become a part of the grant or deed by which they are conveyed as much as if the description was written out on the face of the deed itself. See *Cragin v. Powell,* 128 U. S. 691 (9 Sup. Ct. 203). The constitutional convention of this state, with a commendable sense of honor, thought it but simple justice to disclaim title to all tide lands patented by the United States without regard to the technical right of the general government to convey the same, and there is nothing in the language of the constitution that would indicate that the convention intended to make any disinction between lands which had been patented through the medium of the donation act, and those which had been patented under the pre-emption or commutation acts, or even of private entry. The principle involved in this case, we think, was identical with the principle involved in *Scurry v. Jones, supra,* and the judgment will therefore in all respects be affirmed."

To the contention that this section of the constitution applies only to lands patented at the time of its adoption, it may be answered that such a construction would sacrifice the spirit of the section. Can it be supposed that the constitution makers intended to discriminate between two persons who had, in good faith and for value, become entitled to all of the government's property rights in certain portions of such lands—one of whom had already received his evidence thereof (the patent), and the other of whom had not, although equally entitled thereto? It seems to us that this would be to give consideration to form rather than substance, and to make a distinction justified neither in law or right. It has been the holding of the courts that the virtue of a patent dates from the time the patentee became entitled to it, and not merely from the date of its issuance. In the case of *Stark v. Starrs,* 6 Wall. 402, 18 L. Ed. 925, the United States supreme court, speaking by Mr. Justice Field, used the following language:

"The right to a patent once vested is treated by the government, when dealing with the public lands, as equivalent

to a patent issued. When, in fact, the patent does issue, it relates back to the inception of the right of the patentee, so far as it may be necessary, to cut off intervening claimants."

In the case of *Missouri etc. R. Co. v. Kansas Pac. R. Co.,* 97 U. S. 491, 24 L. Ed. 1095, in discussing a railroad grant, the United States supreme court said:

"As to the intent of Congress in the grant to the plaintiff there can be no reasonable doubt. It was to aid in the construction of the road by a gift of lands along its route, without reservation of rights, except such as were specifically mentioned, the location of the route being left within certain general limits to the action of the plaintiff. When the location was made and the sections granted ascertained, the title of the plaintiff took effect by relation as of the date of the act, except as to the reservations mentioned; the act having the same operation upon the sections as if they had been specifically described in it. . . . The construction thus given to the grant in this case is, of course, applicable to all similar congressional grants, . . ."

The railroad became entitled, in 1884, to whatever patent the government could, under its grant, issue to these lands. It was at that time entitled to, and was the owner of, every property interest in said land which the United States government could, by virtue of said grant, convey. It was such owner and so entitled by reason of having fully complied with the conditions subsequent of the grant, the statute constituting a grant *in praesenti,* with conditions subsequent. *Buttz v. Northern Pac. R. Co.,* 119 U. S. 55, 7 Sup. Ct. 100, 30 L. Ed. 330; *Railroad Co. v. Baldwin,* 103 U. S. 426, 26 L. Ed. 578.

This case is readily distinguishable from that of *Mann v. Tacoma Land Co.,* 153 U. S. 273, 14 Sup. Ct. 820, 38 L. Ed. 714. In that case an attempt was made to locate Valentine scrip upon tide lands, no part of which was subject to such scrip. The would-be locator had no rights whatever to the tide lands he was seeking to file upon with the scrip, and there was no legal authority by which he ever

could, with said scrip, acquire any rights in or to any portion of such lands. In the case at bar, there is no question as to the railway company's right to a patent to the principal part of lot three; but it is contended that said lot, as surveyed, contains certain lands it should not, and that the patent is invalid as to such portion. In other words, the survey is claimed to have been erroneous. It may sometimes be difficult to definitely and accurately locate the line of ordinary high tide. Physical changes going on for a number of years may alter the location of said line. There must be, touching a survey, some authority recognized for legal purposes as correct. It would seem that the survey made by the United States surveyors, after standing forty years or more, as has this, should constitute such authority. It should be presumed as correct in a case where its disturbance would upset titles and destroy the rights of those who have in good faith relied upon it for many years. "The official surveys made by the government are not open to collateral attack in an action at law between private parties." *Whitaker v. McBride*, 197 U. S. 510, 25 Sup. Ct. 530, and cases cited; *Stoneroad v. Stoneroad*, 158 U. S. 240, 15 Sup. Ct. 822, 39 L. Ed. 966; *Russell v. Maxwell Land Grant Co.*, 158 U. S. 253, 15 Sup. Ct. 827, 39 L. Ed. 971; *Horne v. Smith*, 159 U. S. 40, 15 Sup. Ct. 988, 40 L. Ed. 68. In *Hardin v. Jordan*, 140 U. S. 371, 11 Sup. Ct. 808, 838, 35 L. Ed. 428, the supreme court said:

"In our judgment the grants of the government for lands bounded on streams and other waters, without any reservation or restriction of terms, are to be construed as to their effect according to the law of the state in which the lands lie."

In speaking of the effect of a patent, the United States supreme court, in *Whitney v. Morrow*, 112 U. S. 693, 5 Sup. Ct. 333, 28 L. Ed. 871, said:

"If, by a legislative declaration, a specific tract is confirmed to any one his title is not strengthened by a subse-

quent patent from the government. That instrument may be of great service to him in proving his title, if contested, and the extent of his land, especially when proof of its boundaries would otherwise rest in the uncertain recollection of witnesses. It would thus be an instrument of quiet and security to him, but it could not add to the validity and completeness of the title confirmed by the act of Congress. *Langdeau v. Hanes,* 21 Wall. 521; *Ryan v. Carter,* 93 U. S. 78; *Tripp v. Spring,* 5 Sawyer, 209, 216."

See, also, upon this and other points, the case of *Deseret Salt Co. v. Tarpey,* 142 U. S. 241, 12 Sup. Ct. 158, 35 L. Ed. 999.

As the railroad company had been entitled to its patent long before the adoption of the state constitution, we think it was as much entitled to the benefit of the disclaimer of § 2 as if it had already received its patent at the time. We can see no reason for discrimination, and cannot hold that the people intended any.

It is urged by the respondent that the action of the United States government in issuing the patent for these tide lands was a mistake on the part of some of its officers or servants— that the government did not intend to grant or convey any land below high water mark. Ordinarily it is not to be presumed that public officers or servants have made a mistake in a given matter. The presumption is usually the other way. But, suppose it was a mistake, is it not one of the very "mistakes" or circumstances which the people had in mind at the time they adopted the disclaimer section *supra?* When Congress passed the statute making the land grant to this railway company, it did not assume to grant a certain number of acres, or a certain number of sections, or any definite quantity; but it undertook to grant a certain class of *sections* of land, and their identity was defined by reference to the system of government survey. In other words, the railway company was granted every alternate section located within forty miles of the line established by the

24—46 WASH.

definite location of its railway line. These sections were not defined as so many acres, surveyed or platted by the railway company or the county surveyor or state surveyor; but, they were the sections as shown (and to be shown) by the maps and plats prepared by the government from the field notes and surveys of its own surveyors. In *Cragin v. Powell,* 128 U. S. 691, 9 Sup. Ct. 203, 32 L. Ed. 566, the United States supreme court said:

"It is a well-settled principle that when lands are granted according to an official plat of the survey of such lands, the plat itself, with all its notes, lines, descriptions and landmarks, becomes as much a part of the grant or deed by which they are conveyed, and controls so far as limits are concerned, as if such descriptive features were written out upon the face of the deed or the grant itself."

The land in question was surveyed years prior to the time of the admission of this state into the Union, and prior to the filing of the map of definite location of route by the railway company. The enactment of the statute, the filing of the map of definite location, and the survey and platting of these lands, all having taken place years before Washington attained statehood, it must be presumed that the railway company was holding and claiming all of said lot three, including these tide lands, in accordance with said government survey, and that the constitution makers had in mind all such grantees when they adopted the disclaimer aforesaid. The mere fact that the patent, which is but an evidence of a right earned before its issuance, was not actually issued until after the adoption of the constitution, can in our opinion constitute no good reason for depriving the grantee of the benefits sought to be conferred by this section of the constitution. If, as respondent claims, a mistake was made, it first occurred at the time the lands were surveyed. As no attempt has been made during these many years to correct said mistake, and as the government itself, in issuing the patent, recognized the same boundaries estab-

lished long before by its surveyors, we are unable to see wherein the ends of justice would be subserved by this court at this time overturning appellants' title upon the theory that the government officials made a mistake. This lot three (including said tide land), has been sold and conveyed several times, all grantees evidently assuming the description to be correct and the title good. To hold that neither appellants nor any of their predecessors in interest ever had any title to these lands, would, in our opinion, be to permit the very result which the disclaimer clause in the state constitution was intended to avoid.

We conceive the facts set forth in appellants' complaint sufficient to constitute a cause of action. The judgment of the honorable superior court is reversed, and the cause remanded for further proceedings.

CROW, HADLEY, and DUNBAR, JJ., concur.

RUDKIN, J. (dissenting)—It seems to me the majority opinion assumes the very question in controversy in this case. It assumes that the United States granted, or. attempted to grant, this eleven acres below ordinary high tide, covered and uncovered by the flow and ebb of the tide, to the Northern Pacific Railroad Company, by the act of July 2, 1864, and then concludes that this grant was confirmed by § 2 of art. 17 of the state constitution, which provides as follows:

"The state of Washington disclaims all title in and claim to all tide, swamp, and overflowed lands patented by the United States: Provided, the same is not impeached for fraud."

In my opinion, the assumption on which the majority bases its conclusion has no foundation in law or in fact. The defendant contends that Congress could not make a valid grant of tide lands within the territory of Washington, as the United States held such lands in trust for the future state. The plaintiffs contend the contrary. I do not think that that quesion is involved in this case. If any proposi-

tion is settled by the decisions of the federal courts, it is this, that general grants of land, such as the homestead laws, the pre-emption laws, the donation acts, the grant to the Northern Pacific Railroad Company, and all similar acts and grants, do not extend to or include tide lands. In *Mann v. Tacoma Land Co.,* 153 U. S. 273, 14 Sup. Ct. 820, 38 L. Ed. 714, Justice Brewer, in delivering the opinion of the court, said:

"It is settled that the general legislation of Congress in respect to public lands does not extend to tide lands."

The grant to the Northern Pacific Railroad Company stopped at ordinary high tide on Puget Sound. There is no more pretense for claiming that it extended beyond this than there would be for claiming that it extended beyond the forty-mile limit. The only effect of the extension of the public surveys, the filing of the map of definite location, and the construction of the road, was to locate the grant. It will scarcely be contended that the ministerial officers of the United States, in erroneously extending the public surveys below ordinary high tide, carried land grants with them. Had the plaintiffs in this action no other right or title than that conferred by the act of July 2, 1864, and were they relying upon such title alone, I have little doubt that a showing that the land was below ordinary high tide, and was therefore not included within the grant, would be a full and complete defense to the action.

Was the claim of plaintiffs, or their predecessor in interest, confirmed by the constitutional provision above quoted? I cannot believe that it was. In *Mann v. Tacoma Land Co., supra,* the court said that the state "excluded from its claim of title lands which the government had, in the due administration of its land department, disposed of by a patent." Let us look for a moment at the conditions which confronted the framers of the constitution. The state-to-be asserted "its ownership to the beds and shores of all navigable

waters in the state up to and including the line of ordinary high tide, in waters where the tide ebbs and flows, and up to and including the line of ordinary high water within the banks of all navigable rivers and lakes." Art. 17, § 1, State Const. Within the knowledge of the framers of that instrument, patents had already issued for portions of these tide lands, and, in justice to these patentees, the next section° disclaimed all title in, and claim to, all tide, swamp, and overflowed lands patented by the United States. The disclaimer only extended to such tide lands as had already been patented. It cannot be maintained that the state commissioned the general government to patent tide lands in the future, and I do not understand that the majority so hold. As heretofore stated, the general land laws and general land grants do not extend to or include tide lands. Therefore, all existing patents issued under the general land laws for tide lands were issued without authority of law, and were void. This constitutional provision was, in effect, a grant of these lands from the state, and this court so held in *Scurry v. Jones,* 4 Wash. 468, 30 Pac. 726. As a grant from a sovereign state, it should be strictly construed. Nothing passed by implication or by intendment. A constitution is framed with much greater care and deliberation than an ordinary statute, and greater effect is always given to the language used in the former. If I concede that the disclaimer should not be confined to lands patented—which I do not—it should not be extended beyond lands which were the equivalent of patented, at most, and these lands were not. The addition of the proviso, "Provided the same is not impeached for fraud," affords conclusive evidence, to my mind, that the framers of the constitution had in mind the claims of individuals patented under the general land laws in due course of administration, and not cases like the present; for how could a grant by Congress be impeached for fraud?

Let us confront the constitutional convention with the facts

in this case as they stood at the time of its deliberations. The Northern Pacific Railroad Company had no legal or moral claim to this land, it was not within its grant, and no patent had issued. The utmost that could be claimed was that the public surveys had been inadvertently or erroneously extended below ordinary high tide; for, as said by the court in *Barney v. Keokuk,* 94 U. S. 324, 24 L. Ed. 224:

"The United States has wisely abstained from extending (if it could extend) its surveys and grants beyond the limits of high water."

Would the convention have confirmed the title of the railroad company to this land, and to all lands similarly situated under such circumstances? I can conceive of but one answer to this question, and that answer is not found in the majority opinion. It seems to me that the decision of the supreme court of the United States in *Mann v. Tacoma Land Co., supra,* if followed, disposes of every question involved in this appeal. The plaintiff in error in that case, prior to the adoption of the state constitution, had selected and scripped certain tide lands in Elliott bay, and the selection had been approved by the local land office. He had received a certificate from the local land office, certifying that he was entitled to a patent for the land selected as soon as the lands were surveyed by the general government. It was contended in his behalf that his title was confirmed by the constitutional provision relied on by the plaintiffs in this case. In answer to that contention, the supreme court of the United States said:

"Reliance is also placed on art. 17, § 2, of the constitution of the state of Washington, which reads: 'The state of Washington disclaims all title in and claim to all tide, swamp, and overflowed lands patented by the United States: provided, the same is not impeached for fraud.' In respect to this it is enough to say that these lands were not patented. It is doubtless true, as said by this court in *Stark v. Starrs,*

6 Wall. 402, 418, that the 'right to a patent once vested is treated by the government when dealing with the public lands, as equivalent to a patent issued.' But here there was no right to a patent. The entry in the local land office, and the receipt issued by the local land officers, were unauthorized acts, and gave no right to a patent; and it cannot be supposed that the state of Washington, when it excluded from its claim of title lands which the government had in the due administration of its land department disposed of by a patent, meant thereby to exclude every tract for which a local land officer might wrongfully issue a receiver's receipt."

To this we might well add, "nor to exclude every tract over which the ministerial officers of the government had wrongfully extended the public surveys."

The above decision also disposes of what is said in the majority opinion about the doctrine of relation. In conclusion, the opinion of the majority rests upon the following statement contained therein:

"The railroad became entitled, in 1884, to whatever patent the government could, under its grant, issue to these lands. It was at that time entitled to, and was the owner of, every property interest in said land which the United States government could, by virtue of said grant, convey. It was such owner and so entitled by reason of having fully complied with the conditions subsequent of the grant, the statute constituting a grant *in praesenti*, with conditions subsequent."

What I have said sufficiently shows that this declaration is entirely inconsistent with the decisions of the supreme court of the United States. The Northern Pacific Railroad Company acquired no interest whatever in this land in 1884, or prior thereto, or at any time, until a patent was wrongfully issued years after the adoption of the state constitution.

For these reasons I dissent from the majority opinion.

MOUNT, C. J., and FULLERTON, J., concur with RUDKIN, J.