[No. 8876. Department One. November 23, 1910.]

ELIZABETH OUELLETTE *et al.*, *Appellants*, v. OLYMPIA JIM *et al.*, *Respondents*.

ELIZABETH OUELLETTE *et al.*, *Appellants*, v. DICK JACKSON *et al.*, *Respondents*.

ELIZABETH OUELLETTE *et al.*, *Appellants*, v. HARRIET KORTER, *Respondent*.[1]

BOUNDARIES—LOST CORNERS—EVIDENCE TO ESTABLISH—SUFFICIENCY —SURVEYS—FIELD NOTES. A survey to locate a lost corner on the west meander line of a section, by reference to the witness trees called for in the field notes, from which point other corners, noted in the field notes as marked by a pile of stones, are located on the meander line approximately at high tide mark, takes precedence over and overcomes a survey of the south line of the section by courses and distances, whereby the west meander line of the section is established further west, and twenty-five rods below ordinary high tide in 18 feet of water at high tide, where a meander line could not have been run.

[1]Reported in 111 Pac. 790.

Appeal from a judgment of the superior court for Thurston county, Mitchell, J., entered February 14, 1910, in favor of the defendants, after a trial on the merits before the court without a jury, in an action to quiet title. Affirmed.

*G. C. Israel* and *Frank C. Owings*, for appellants.

*Troy & Sturdevant, George H. Funk,* and *H. J. Snively,* for respondents.

RUDKIN, C. J.—These several actions were instituted to recover possession of and quiet title to parts of lot 4, of section 13, tp. 19 N., R. 3, West, W. M., in Thurston county, and were consolidated for the purposes of trial. From a judgment in favor of the defendants, the plaintiffs have appealed.

The Northern Pacific Railroad Company received a patent for lot 4, and other lands, under the act of Congress of July 2, 1864, and the appellants claim title to lot 4 through mesne conveyances from that company. The parts of lot 4 in controversy lie below the line of ordinary high tide on Totten Inlet, and are claimed by the respondents as oyster lands, under deeds and contracts from the state. The only question we deem it necessary to determine on this appeal is the correct location of the meander line along the westerly side of fractional section 13, of which lot 4 forms a part. Fractional section 24 lies immediately south of fractional section 13, and there is no dispute between the parties as to the true location of the following monuments bounding these two sections, viz., the northwest corner of fractional section 13, the northeast corner of fractional section 13, the southeast corner of fractional section 13, which is also the northeast corner of fractional section 24, and the southeast corner of fractional section 24.

The principal question in controversy is the true location of the southwest corner of fractional section 24, for with that corner located the meander line can be readily traced from

the field notes by courses and distances. In locating this corner and tracing the meander line, the appellants followed the field notes of the original survey on file in the office of the surveyor general, by courses and distances from the south-east corner of the section, and if this method is to be adopted and followed, it is conceded that the lands in controversy are within the confines of lot 4, and are included in the patent under which the appellants claim. *Kneeland v. Korter,* 40 Wash. 359, 82 Pac. 608, 1 L. R. A. (N. S.) 745. This line we will hereafter refer to for convenience as the appellants' survey. The respondents, on the other hand, made a survey of the south line of section 24, and the west line of fractional sections 24 and 13, which we will refer to as the respondents' survey. By this latter survey the southwest corner of fractional section 24 was located, by reference to the bearing or witness trees described in the field notes, at a point 5.90 chains east of the corner as fixed by the appellants' survey. In other words, the distance along the south line of fractional section 24, according to the measurements given in the field notes, is 79.50 chains, whereas, the distance is only 73.60 chains if the southwest corner is located by reference to the bearing or witness trees mentioned in the field notes. The rule prescribed by the department of the interior for relocating missing or lost corners is the following:

"The identification of mounds, pits, and witness trees, or other objects noted in the field notes of survey, affords the best means of relocating the missing corner in its original position. If this cannot be done, clear and unquestioned testimony as to the locality it originally occupied should be taken, if such can be at all obtained. In any event, whether the *locus* of the corner be fixed by the one means or the other, such *locus* should always be tested and proven by measurements to *known* corners. No definite rule can be laid down as to what shall be sufficient evidence in such cases, and much must be left to the skill, fidelity, and good judgment of the surveyor in the performance of his work." 1 Land Decisions, 676.

Many of the rules given for the ascertainment of lost boundaries are not inflexible; but in this case the bearings of the post at the southwest corner of section 24 are thus given in the field notes:

"A fir, 20 ins. dia., N. 43° E.,   66 lks. dist.,
"   "   14   "     "  N. 29° W., 100  "     "
"   "   18   "     "  S.  3° E.,  18  "     " "

and an error in the measurement of the distance across the section is far more likely to occur than an error in the measurement of the shorter distances to the several witness trees. Furthermore, the respondents' survey located the west center post of section 24 by reference to the bearing trees at that point, and this location corresponds with the southwest corner of the section when located by reference to the bearing trees there, whereas, the appellants' survey located this same post approximately six chains farther west. Again, according to the field notes, the surveyor "set a post on the S. E. beach of Totten Inlet, for cor. of fracl. sec. 13 and 24, and piled stones around it as per instructions." This corresponds with the respondents' survey at the same point, which located this corner approximately at the line of ordinary high tide, whereas, the appellants' survey located the same corner approximately 25 rods below the line of ordinary high tide, in upwards of 18 feet of water at extreme high tide. We are convinced that no corner was ever located at such a point, and that no meander line was ever surveyed or located along the line indicated by the appellants' survey, for such a line could only be run at extreme low tide if at all. The record in this case abundantly shows that government surveying is not one of the exact sciences, but we are fully convinced that the respondents' survey is approximately correct, and that no part of the land in controversy lies within lot 4 as claimed by the appellants. The judgment is therefore affirmed.

FULLERTON, GOSE, PARKER, and MOUNT, JJ., concur.