[Nos. 32-40215-1, 32-40482-1.    Division One.    September 22, 1969.]
Panel 1

ALBERT J. LILYGREN *et al., Respondents*, v. GENE B. ROGERS
*et al., Appellants.*

ALBERT J. LILYGREN *et al., Respondents*, v. GENE B. ROGERS
*et al., Appellants.*

*Glenn W. Toomey*, for appellants.

*Franco, Asia, Bensussen & Coe* and *Benjamin S. Asia*, for respondents.

SWANSON, J.—The appellants Rogers, contract purchasers of land, defended a lawsuit to recover delinquent pay-

ments brought by the sellers Lilygren, claiming they were fraudulently induced to buy certain erosion plagued ocean front property located in Pacific County, Washington. They also attacked the adequacy of the legal description, contending the contract violated the statute of frauds. Judgment was entered in the Superior Court for King County upholding the contract and dismissing the defense of fraud in the inducement. The purchasers appealed.

Thereafter, the sellers started another action in the same court to recover the remaining balances due on the contract. Summary judgment was granted for respondents Lilygren. A second appeal followed; both were consolidated for hearing before this court.

The assignments of error in the first action, although numerous, raise only two issues.

The first issue deals with the alleged error of the trial court in striking appellants' affirmative defense that the contract violated the statute of frauds in that the legal description was inadequate. The land in question is bounded on one side by the Pacific Ocean and is an irregular tract not measuring up to a full quarter section of upland; in fact, when originally surveyed by the United States Government in 1858, it contained only 144 acres. At the time the contract was entered into in 1963, there were only 48 acres of upland. The contract described the property as follows:

Fractional northeast quarter of Section 9, Township 14 North, Range 11 West, W.M., Pacific County, Washington.

Is this a sufficiently precise legal description to satisfy the statute of frauds? Does the use of the term "fractional" render the description indefinite, requiring resort to parol evidence to locate it as the appellants contend? That is the issue to be determined by this court.

The Supreme Court of the State of Washington, in *Bigelow v. Mood*, 56 Wn.2d 340, 341, 353 P.2d 429 (1960), restated the standard of definiteness previously given in *Martinson v. Cruikshank*, 3 Wn.2d 565, 101 P.2d 604 (1940), and *Martin v. Seigel*, 35 Wn.2d 223, 212 P.2d 107, 23 A.L.R.2d 1 (1949), as follows:

We have held consistently that, in order to comply with the statute of frauds, a contract or deed for the conveyance of land must contain a description of the land sufficiently definite to locate it without recourse to oral testimony, or else it must contain a reference to another instrument which does contain a sufficient description.

As recently as *Heim v. Faulstich*, 70 Wn.2d 688, 690, 424 P.2d 1012 (1967), the Supreme Court has reiterated the strict position taken in *Martin v. Seigel, supra,* as follows:

We do not care to recede from the rule adopted by us, which has been stated in a long line of decisions over a number of years, and known and followed by the members of the bar and title men. We do not apologize for the rule. We feel that it is fair and just to require people dealing with real estate to properly and adequately describe it, so that courts may not be compelled to resort to extrinsic evidence in order to find out what was in the minds of the contracting parties.

Given this adherence to a strict policy, what is to be made of the description here, the "fractional northeast quarter of section 9"? Obviously, the result must turn on the use of the term "fractional." If the description read "the northeast quarter of section 9," it would be entirely adequate. Is "fractional" a term of art?

In enacting legislation establishing the survey of public lands, Congress stated the term "fractional" shall have a definite legal meaning as applied to a description of land. 43 U.S.C.A. § 751, et seq. This is recognized in the cases.

In extending the surveys of the public domain, fractional sections are caused by lakes or other bodies of water, and streams which are meandered, and Indian and other reservations. Where government surveyors encounter such obstructions they have authority to make fractional sections.

73 C.J.S. *Public Lands* § 29 (1951).

The court, in *South Florida Farms Co. v. Goodno*, 84 Fla. 522, 94 So. 672 (1922), explains the term as follows:

A section of land, as a legal subdivision under the Con-

gressional rules of survey, is a mile square and usually contains 640 acrs [*sic*]. When a section is not whole or regular in its contents, that is where it does not contain approximately 640 acres, it may properly be called a "fractional section." Where because of the presence of a permanent body of water which is approximately meandered in making the survey, there is a deficiency in the area of a section, it is referred to as a "fractional section."

Again, in *Northern Road Imp. Dist. v. Zimmerman,* 188 Ark. 627, 67 S.W.2d 197 (1934), the term is defined:

On the other hand, it has been held that the use of the word "fractional" is a good description, where it is used in connection with a subdivision of a section in describing it to mean either that there is more or less land than is usually contained in such subdivision in the sectionizing of same by the government. In other words, a subdivision, according to the public survey, which is described as fractional is accurately and sufficiently described where it is made fractional from the fact alone that it contains either more or less, usually less, land than such subdivision ordinarily contains. In such cases the designation "fractional" describes all the land in that subdivision. *Graysonia-Nashville Lbr. Co. v. Wright,* 117 Ark. 151, 175 S.W. 405.

Clearly, a description of land in a contract as "part of the northeast quarter" would be insufficient; however, the use of the word "fractional" indicates that the subdivision of land involved contains probably less land than such subdivision would ordinarily contain, but does contain all that is there. The United States Supreme Court indicated as early as 1873 that legal subdivisions of land smaller than one-quarter of a quarter section would be properly described as "fractional" sections. *Warren v. Van Brunt,* 86 U.S. (19 Wall.) 646, 652, 22 L. Ed. 219 (1873). The United States Supreme Court has also discussed "fractional" sections without any disapproval of the word. *Kean v. Calumet Canal & Imp. Co.,* 190 U.S. 452, 23 S. Ct. 651, 47 L. Ed. 1134 (1903).

Likewise, the Washington Supreme Court has discussed fractional subdivisions of land without disapproval but

without deciding this precise issue. See *Newman v. Buzard,* 24 Wash. 225, 64 P. 139 (1901); *Ouellette v. Olympia Jim,* 60 Wash. 562, 111 P. 790 (1910); *Wilson v. Mills,* 91 Wash. 71, 157 P. 467 (1916); *Greenblum v. Gregory,* 160 Wash. 42, 294 P. 971 (1930).

It is stated in Clark, A Treatise on The Law of Surveying and Boundaries § 195 (3d ed. Grimes 1959):

> Fractional lots are those irregular tracts of land designated on the plats of surveys by the land department of the government. They are to be found only in fractional sections or fractional tracts. They are formed . . . (b) By meandered lakes, ponds or rivers which may cover a part of a section . . .

See also Patton, Land Titles § 116, at 293 (2d ed. 1957). Black's Law Dictionary 786 (4th ed. 1951) also defines fractional:

> As applied to tracts of land, particularly townships, sections, quarter-sections, and other divisions according to the government survey, and also mining claims, this term means that the exterior boundary lines are laid down to include the whole of such a division or such a claim, but that the tract in question does not measure up to the full extent or include the whole acreage, because a portion of it is cut off by an overlapping survey, a river or lake or some other external interference.

Thus, while the question before this court is one of first impression, one may see that "fractional" has long been used as a term of art to describe a subsection of land containing less land than such subdivision usually contains.

Even though tacitly conceding that the term "fractional" may have an established legal meaning, the appellants contend its use in the description under consideration does not permit one to determine what property is being conveyed without recourse to parol evidence or another document not mentioned in the contract. The simple answer to this argument is that the use of the term "fractional" is part of the system of survey of public lands of which the Washington courts take judicial notice. Our court, in *Bingham v. Sherfey,* 38 Wn.2d 886, 887, 234 P.2d 489 (1951), stated:

Since *Carson v. Railsback*, 3 Wash. Terr. 168, 13 Pac. 618, we have taken judicial notice of the system of survey of public lands adopted by the United States.

In *Kneeland v. Korter*, 40 Wash. 359, 82 P. 608 (1905), the court quoted with approval from *Cragin v. Powell*, 128 U.S. 691, 9 S. Ct. 203:

> "It is a well-settled principle that when lands are granted according to an official plat of the survey of such lands, the plat itself, with all its notes, lines, descriptions and landmarks, becomes as much a part of the grant or deed by which they are conveyed, and controls so far as limits are concerned, as if such descriptive features were written out upon the face of the deed or the grant itself."

In *Greenblum v. Gregory, supra,* our court recognizes both the existence of "fractional sections" and that a description of land in a government survey is a reference to the plat. The court cited with approval *Little v. Williams*, 88 Ark. 37, 113 S.W. 340 (1908).

> Courts take cognizance judicially of the general system of government surveys, and accordingly we know that lands are surveyed and platted into sections and parts of sections and into fractionals where they abut on streams or other bodies of water.

It is apparent that land survey statutes and court decisions have long recognized the term "fractional" as a precise term of art with a definite legal meaning. We therefore hold that the inclusion of "fractional" in a legal description of land does not render the same indefinite and in violation of the statute of frauds.

Appellants also assign error to the findings of fact and conclusions of law made by the trial court in respect to their claim for rescission and/or damages. It is not necessary to note these findings and conclusions in detail; they go to the issue of fraudulent inducement to enter into the real estate contract. Nor is it necessary to discuss this issue in extenso. We believe the trial court accurately summarized the factual situation in its oral opinion as follows:

> Mr. and Mrs. Rogers knew that they were dealing with a piece of property that had once been more extensive

than that which they were now buying; that the acreage had been greatly reduced, that there was a specific reference to erosion and possible claims of the State of Washington in the policy of title insurance. There were just all kinds, it seems to me, of danger flags to alert them to problems, and there was very little on the other side.

█ We have thoroughly reviewed the trial record. The trial court based its findings on the evidence before it; these findings are supported by substantial evidence. Even though this court may have found the facts differently, we will not substitute our judgment for that of the trial court where there is substantial evidence to support its findings. *John R. Hansen, Inc. v. Pacific Int'l Corp.*, 76 Wn.2d 220, 455 P.2d 946 (1969); *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

Applying this test, this court cannot and will not disturb the trial court's findings. The remaining assignments of error are directed to the court's conclusions of law, and the basis for these assignments failed when the court's actual findings were sustained.

█ In the second trial which led to this consolidated appeal, respondents Lilygren brought an action for the remaining balances due under the real estate contract. Appellants plead failure of consideration and alleged that the subject matter of the contract has disappeared into the Pacific Ocean. Respondents did not deny that the property had so disappeared. The trial court granted summary judgment despite appellants' contention that this allegation raised a material issue of fact to be resolved. The trial court said this fact had been previously litigated and was therefore res judicata. The criteria for application of the doctrine of res judicata require concurrence of identity in four respects: (1) subject matter; (2) cause of action; (3) persons and parties; and (4) quality of the persons for or against whom the claim is made. *Symington v. Hudson*, 40 Wn.2d 331, 243 P.2d 484 (1952), *accord, State ex rel. Carroll v. Bastian*, 66 Wn.2d 546, 403 P.2d 896 (1965). In this case we have the same subject matter, the same parties,

the same quality of persons, and the same cause of action.

Although the lands in question had not totally disappeared at the time of the first trial, the question of its eroding away was thoroughly litigated. The trial court, in its oral opinion, stated:

> I am confronted by a regrettable situation. I wish that it were in my power to halt the forces of nature and restore this land that has been taken away and stop what is apt to happen in the future, but I can't do it. I hope that perhaps nature will solve the problem, but I am afraid it is in the hands of nature and not mine. I regret that I can't come to the rescue of Mr. and Mrs. Rogers, but I can't do it. I can't find fraud here. Mr. Lilygren sold the property; Mr. Rogers bought it, and I am afraid that it is Mr. Rogers' problem.

While not specifically argued, it is apparent that there was actually no material issue of fact raised in that respondents did not deny that the upland had totally eroded away. Such was conceded. That some day the land might completely slip away into the sea was a risk accepted by appellants at the time of purchase. This did not result in a failure of consideration. The appellants did not lose the subject of their purchase—only its character had changed. What had been upland when the contract was entered into was now tideland through no fault of either buyer or seller. Whatever the blame, it can only properly be laid at the door of those inscrutable forces or laws of nature that control the ebbing and flowing of the tides.

The judgments of the trial court in both actions are affirmed.

JAMES, C. J., and FARRIS, J., concur.