[No. 793.  Decided March 14, 1893.]

JUNIUS ROCHESTER AND CARRIE A. ROCHESTER, *Respondents*, v. ESTATE OF SARAH B. YESLER, *Deceased, et al., Respondents,* FREEMAN P. KIRKENDALL *et al., Appellants.*

STATUTE OF FRAUDS — PAROL CONTRACT TO CONVEY LAND — POSSESSION TAKEN AFTER VENDOR'S DEATH.

Where a written contract for the conveyance of land is so indefinite that it cannot be determined without resort to parol testimony, the contract is not taken without the operation of the statute of frauds by possession of the land taken subsequent to the death of the party agreeing to convey.

*Appeal from Superior Court, King County.*

*Greene & Turner*, for appellants.

*Thompson, Edsen & Humphries,* for respondents.

The opinion of the court was delivered by

DUNBAR, C. J.—This action is based on the following contract:

"SEATTLE, W. T., July 30, 1887.

"Whereas, J. B. Metcalfe and his associates propose to construct a cable road along through the line of Mill, Main or Jackson streets, in Seattle, W. T., and to run cars thereon and to otherwise equip and operate said road which shall run from, at or near the Elliott Bay to Lake Washington along the line of one of said streets:

"Now, therefore, we, the undersigned property holders, hereby subscribe' and donate to said enterprise, property as set opposite our names—contracts to convey said property, to be given conditioned upon the construction of the road, and deeds to same whenever the said road shall be completed.

H. L. YESLER, ten acres on Lake Washington.

S. B. YESLER, ten acres 10.

J. B. METCALFE."

And is brought against the estate of Sarah B. Yesler, deceased, by the grantee of J. B. Metcalfe and his associates, to compel the execution of a deed to the petitioner, Carrie A. Rochester, by the administrator of the estate of Sarah B. Yesler, deceased, and praying that her title be quieted as against the estate and the heirs of the said Sarah B. Yesler, deceased. On the trial of the cause the court decreed that Carrie A. Rochester was entitled to a deed of conveyance, to be executed in due form by defendant J. D. Lowman, administrator of the estate of Sarah B. Yesler, deceased, for the lands described in the complaint, and that Lowman as such administrator execute such deed.

It is contended by the appellants—(1) That no jurisdiction existed in the superior court on such a petition to render the decree it did upon the evidence, for the reason

that the powers of the court upon such a petition were statutory, special and limited, and confined to the case and procedure specified in the statute; (2) that even if the court did have jurisdiction under the petition, the petitioners were not entitled to specific performance upon the evidence.

The view we take of the last proposition renders unnecessary a discussion of the first. It will be seen by reference to the alleged contract of July 30, 1887, that it does not constitute a written contract to convey any particular land; it is too indefinite to convey anything, and resort must be had to oral testimony to make any contract. The testimony as to what land Mrs. Yesler intended or promised to convey at that time is exclusively oral testimony. The map spoken of by Metcalfe is not in evidence; it is not referred to in any way in the written agreement, and all the testimony concerning it is oral. We think it will be conceded that this contract falls within the statute of frauds, and therefore cannot be enforced unless it is relieved by possession, and we have looked through the record in vain for any evidence of possession prior to the death of Mrs. Yesler. It is no doubt true that possession was taken of the land by Metcalfe and his associates, and that valuable improvements were placed thereon after Mrs. Yesler's death, but such possession is not sufficient to bind Mrs. Yesler, and therefore to bind her estate. There must have been possession before her death, and there must have been such a contract that under its conditions a court of equity could have decreed a specific performance against Mrs. Yesler. There was no such contract in existence at the time of her death, and none could grow into existence after her death to bind her estate. The very terms of the memorandum show that whatever undescribed land it was that she intended to convey, it was only to be conveyed upon conditions to be performed, and that no possession or

any other right was granted at the time. There is no testimony whatever tending to show that there was any attempt to take possession of the land until after Mrs. Yesler's death.

On the subject of possession and improvement, Junius Rochester testified as follows:

"Q. When was the railroad completed? A. In September, 1888.

"Q. You think the clearing was commenced some time in 1888? A. Yes, I think towards the first of the year."

Metcalfe, who was the man who made the alleged contract with Mrs. Yesler, who was the organizer of the company, and who was the principal witness in this case, testified as follows:

"Q. What was done with reference to taking possession of this ten acres of ground and improving it, if anything? A. Well, all that part of it, I am not as familiar with as a number of others, but I know that there was clearing of the land soon after commenced; about the time, if I recollect right, or between the time of the beginning of the construction and the completion of the road."

This is all the testimony there is as to the time when possession was taken and improvement commenced. This testimony shows that such improvements were made, and possession taken for the purpose of making improvements, between the commencement and finishing of the road, and further shows that the road was not commenced until the early part of the year 1888. But Mrs. Yesler's death occurred August 28, 1887, so that it is plain that no possession was taken of the land in dispute and no improvements made thereon until several months subsequent to her death.

The judgment will, therefore, be reversed and the cause dismissed.

HOYT, STILES, ANDERS and SCOTT, JJ., concur.