[No. 4516–II.   Division Two.   July 3, 1980.]

ROBERT A. DUNBABIN, ET AL, *Respondents,* v. ALLEN REALTY COMPANY, INC., *Appellant.*

*William D. Cameron,* for appellant.

*James Gooding,* for respondents.

PETRICH, J.—Allen Realty Company, Inc., appeals the judgment of the trial court which declared plaintiffs Robert and Jean Dunbabin to be the equitable owners of certain real property and which dismissed defendant's counterclaim alleging forfeiture of a real estate contract by plaintiffs. We affirm the judgment of the trial court in all respects.

The facts in this appeal center around the sale of an apartment building located in the Capitol Hill district of Seattle to plaintiffs by defendant Allen Realty. In February 1976 plaintiffs signed an earnest money contract to purchase the building from defendant. Herman Ginsberg and Archie Katz accepted the earnest money contract on behalf of Allen Realty as its president and secretary. They owned equally all of the outstanding stock of the company. The earnest money contract provided for closing within 120 days, named Herbert Droker as closing agent and stated that the seller would carry a real estate contract to be signed by the parties at closing. After the earnest money contract was signed, it was delivered to Droker who prepared the closing documents and the real estate contract.

At a later date, escrow instructions signed by plaintiffs and by Ginsberg as president of Allen Realty were forwarded to Droker.

At this time the relationship between Katz and Ginsberg had broken down. In March 1976 a receivership action was filed by Ginsberg (King County cause Nos. 809634 and 813320), and a receiver was appointed in July 1976 to take charge of the assets of Allen Realty. Meanwhile, neither Katz nor Ginsberg appeared to close the sale of the apartment building within the 120–day time period. Since plaintiffs were ready and willing to close, Droker authorized them to take possession of the building in June 1976. Disputed testimony was presented concerning whether Droker did so upon the express authority of defendant's officers.

Plaintiffs took possession from this date, made substantial improvements in the building and upgraded the tenants. They made payments on the real estate contract, first to Droker and later to the receiver, paid the real estate taxes and obtained insurance. When Katz continued to refuse to close the sale, plaintiffs sued Allen Realty, its officers and receiver for specific performance of the sale contract in November 1976. (King County cause No. 820938.) While the specific performance action was pending, Judge Steere, the judge in the receivership proceeding, heard arguments from all parties in December 1976 concerning whether or not the receiver should be ordered to perform the earnest money contract and complete the sale of the apartment building to plaintiffs. By way of an order dated January 5, 1977, Judge Steere directed the receiver to close the sale in accordance with the earnest money contract. The receiver complied by signing the real estate contract on February 15, 1977. After the sale closed, the parties voluntarily dismissed the specific performance action in April 1977. The receiver was eventually dismissed in March 1978,[1] and the remaining assets of Allen Realty were dis-

---

[1]Although an order dismissing the receiver does not appear in the record

tributed to Katz.

After the receiver was dismissed, defendant accepted benefits under the real estate contract by accepting payments and by pledging the contract, along with others, to Rainier Bank as security for a loan. Throughout these proceedings, plaintiffs continued to make payments on the real estate contract and to pay taxes and insurance premiums. Plaintiffs were unable to deposit taxes into a reserve account pursuant to the terms of the real estate contract due to confusion during the receivership proceedings, but they paid taxes to the receiver and later paid them directly to King County. In September 1978 Katz sent plaintiffs a notice of intention to declare a forfeiture and cancel the real estate contract due in part to their failure to deposit money for taxes into the reserve account and their failure to insure the building for its actual value in accordance with the contract. Katz refused to accept further payments and declared the real estate contract cancelled in October 1978.

In November 1978 plaintiffs filed the present action and sought a judgment declaring their rights under the real estate contract. At trial defendant attempted to disaffirm the contract of sale by asserting certain deficiencies in the sale documents and in the circumstances surrounding the sale. Specifically, defendant argued that the original earnest money contract was invalid since it was signed by Katz under the influence of fraud and coercion, and that it failed

---

before us, we accept the statement made by defendant's attorney during argument that the receivership proceedings ended in March 1978 when orders were entered which terminated the authority of the receiver and distributed the assets remaining in the receivership estate to Katz. Defendant now challenges the regularity of the receivership proceedings and asserts that the receiver never made a final accounting. We find, however, that any remaining disputes between Allen Realty and its receiver can have no effect on Allen Realty's dealings with third parties such as plaintiffs. Plaintiffs, therefore, had a right to rely on actions taken by the receivership court which affected their rights and are not bound by any continuing dispute between Allen Realty and its receiver.

to satisfy the statute of frauds since it did not contain a legal description of the property subject to sale. Defendant also argued that the contract was invalid because the receiver's action in closing the sale in February 1977 was never confirmed by court order. As well, defendant pursued a counterclaim by asserting that plaintiffs had defaulted on the real estate contract. After hearing evidence, the trial court declared plaintiffs to be the equitable owners of the building and dismissed defendant's counterclaim for forfeiture of the contract. In order to correct one of the deficiencies in the sale asserted by defendant, the trial court suggested in its findings of fact that Judge Steere confirm the receiver's sale nunc pro tunc. Judge Steere complied and confirmed the sale nunc pro tunc in a proceeding held after entry of the trial court's findings of fact.

Defendant has made numerous assignments of error on appeal. The primary issues, however, are whether the trial court erred in refusing to void the contract of sale and by finding that plaintiffs were not in default of the real estate contract. We hold that an enforceable contract of sale arose between the parties, and that plaintiffs are not in default of the real estate contract.

We find no merit in defendant's arguments by which it seeks to disaffirm the contract of sale. At trial Katz testified that he was coerced into signing the earnest money contract by Ginsberg and Robert Dunbabin who conspired to deprive Allen Realty of the building for a price below its fair market value. In direct contradiction, Robert Dunbabin denied the existence of such a conspiracy in his testimony and stated that the price of the building was low because of its poor condition. He also testified that no coercion took place and stated that Katz, himself, drafted the earnest money contract and later expressly authorized Droker to give plaintiffs possession of the building in June 1976. The trial court's resolution of this issue rests upon its finding Robert Dunbabin to be the more credible witness. Since this finding is supported by substantial evidence, we

decline to disturb it on appeal. *E.g., Holland v. Boeing Co.,* 90 Wn.2d 384, 583 P.2d 621 (1978); *Morgan v. Prudential Ins. Co. of America,* 86 Wn.2d 432, 545 P.2d 1193 (1976).

We also find no merit in defendant's contention that the earnest money contract is unenforceable because of its failure to conform to the statute of frauds. An earnest money contract for the sale of real property must contain a legal description of the property subject to sale so that the parties can understand with certainty the exact boundaries of the property to be sold. *E.g., Herrmann v. Hodin,* 58 Wn.2d 441, 364 P.2d 21 (1961); *Fosburgh v. Sando,* 24 Wn.2d 586, 166 P.2d 850 (1946). However, a contract for the sale of land which does not satisfy the statute of frauds is enforceable by the part performance of the parties when the purchaser takes exclusive possession of the property in reliance of the contract with the assent of the seller, tenders payment of the purchase price and makes substantial improvements in the property. *Powers v. Hastings,* 93 Wn.2d 709, 612 P.2d 371 (1980); *Richardson v. Taylor Land & Livestock Co.,* 25 Wn.2d 518, 528–29, 171 P.2d 703 (1946); Restatement (Second) of Contracts § 197 (Tentative Draft No. 4, 1968). *See generally Miller v. McCamish,* 78 Wn.2d 821, 825–26, 479 P.2d 919 (1971); 2 A. Corbin, *Contracts* § 434 (1950). In the present case the record shows that plaintiffs have held exclusive possession of the property since June 1976 with the assent of defendant's officers, that they have made payments as required by the contract of sale and have made substantial improvements to the property. We hold, therefore, that the parties are excused from strict compliance with the statute of frauds by their part performance in reliance on the earnest money contract. We note further that in contrast to cases which have held earnest money contracts unenforceable for failure to include a legal description, the parties in the present action clearly understood the boundaries of the property subject to sale. The legal description appeared in several documents prepared subsequent to the earnest money contract,

including the real estate contract, and the notice of intention to declare a forfeiture prepared by Katz in September 1978.

Defendant next asserts that the sale is invalid because the receiver's action in closing the sale in February 1977 was never confirmed by court order. *See generally In re Spokane Sav. Bank,* 198 Wash. 665, 671–72, 89 P.2d 802 (1939); 2 R. Clark, *Law of Receivers* §§ 482, 517 (1959). In view of Allen Realty's acceptance of benefits under the contract of sale between February 1977, the date of the supposed invalid closing, and September 1978, when it declared a forfeiture of the contract, we hold that it is now estopped to assert this and other deficiencies in the sale proceedings. *Longenecker v. Brommer,* 59 Wn.2d 552, 557, 368 P.2d 900 (1962); 5 S. Williston, *A Treatise on The Law of Contracts* § 687 (3d ed. 1961).

Any deficiencies asserted in the receivership proceedings could have been asserted in a timely manner by contesting the interim orders of the receivership judge or by appealing the order which dismissed the receiver in March 1978. Likewise, all of defendant's arguments for voiding the earnest money contract could have been urged, and possibly were, to Judge Steere in December 1976 when he heard testimony before ordering the receiver to perform the earnest money contract. Defendant did not perfect an appeal asserting any alleged deficiencies in the earnest money contract or in the receiver's action in closing the sale. Instead, after the receivership action ended in March 1978, Katz, one of the principal officers and then sole shareholder of defendant, pledged the real estate contract as security for a loan and allowed payments to be collected thereunder. Such actions are clearly inconsistent with a later assertion that the sale itself is invalid for various reasons. We hold, therefore, that it is barred by collateral estoppel from asserting these deficiencies in a subsequent proceeding. *American Linen Supply Co. v. Nursing Home Bldg. Corp.,* 15 Wn. App. 757, 766–67, 551 P.2d 1038 (1976).

■ The next major issue raised by defendant is whether the trial court erred in dismissing its counterclaim for forfeiture of the real estate contract. In the notice of intention to declare a forfeiture Katz stated that he intended to cancel the real estate contract because of plaintiffs' failure to pay current real estate taxes, failure to pay taxes into a reserve account, and their failure to insure the building for its full value according to the strict terms of the contract. It is well established that forfeiture is not a favored remedy and will be enforced against a purchaser only when consonant with fairness and justice. *Dill v. Zielke,* 26 Wn.2d 246, 252, 173 P.2d 977 (1946); *Chambers v. Cranston,* 16 Wn. App. 543, 545, 558 P.2d 271 (1976). *See generally* G. Osborne, *Real Estate Finance Law* § 3.26 (1979); *Skendzel v. Marshall,* 261 Ind. 226, 301 N.E.2d 641 (1973), *cert. denied,* 415 U.S. 921, 39 L. Ed. 2d 476, 94 S. Ct. 1421 (1974). After receipt of the notice of intention to declare a forfeiture, the purchaser has a reasonable time to cure defective performance and to reinstate his rights under the contract. *Knoblauch v. Sanstrom,* 37 Wn.2d 266, 270, 223 P.2d 462 (1950); *Moeller v. Good Hope Farms, Inc.,* 35 Wn.2d 777, 783, 215 P.2d 425 (1950); *Dill v. Zielke, supra; Hall v. Nordgren,* 196 Wash. 68, 81 P.2d 857 (1938).

The record in the present case clearly demonstrates that defendant had no grounds to declare a forfeiture. Evidence was presented at trial showing that plaintiffs have paid all real estate taxes due, either by paying the receiver or by paying King County. The failure of plaintiffs to comply strictly with the terms of the real estate contract and to pay amounts due for taxes into a reserve account is excused by their apparent inability to do so during the receivership proceedings. Following receipt of the notice of intention to declare a forfeiture, plaintiffs raised the amount of insurance coverage to comply with the requirements of the contract. We hold that by doing so they properly complied with the terms of the contract, and defendant had no grounds to declare a forfeiture.

Defendant raises four additional issues on appeal, two concerning alleged errors in the present declaratory judgment proceeding and two concerning alleged errors in the confirmation proceeding held before Judge Steere following entry of the declaratory judgment.

Defendant argues that the court in the present action did not have jurisdiction because the receiver was not joined as a necessary party. We find no merit in this argument. The receiver was discharged in March 1978 when the receivership proceedings ended, more than 6 months before the present declaratory judgment action was even commenced. As such, the receiver's rights could no longer be affected or prejudiced by the declaratory judgment action. Therefore, he need not have been joined as a necessary party. *See Williams v. Poulsbo Rural Tel. Ass'n,* 87 Wn.2d 636, 555 P.2d 1173 (1976); RCW 7.24.110 (only those parties whose rights and interests are prejudiced or affected by a declaratory judgment action must be joined).

Defendant also argues that the trial court erred by taking judicial notice of the files in the receivership action. We find no merit in this argument. The only item from the receivership proceeding really at issue in the declaratory judgment action was Judge Steere's order directing the receiver to close the sale. This document was admitted into evidence as an exhibit. As such, its contents were proven by the record, and it was not necessary to take judicial notice of the entire receivership files. Further, since defendant's counsel did not properly object to the trial court's action in taking judicial notice of the files, it may not now raise this objection on appeal.

Finally, defendant argues that plaintiffs are collaterally estopped from seeking an order confirming the receiver's sale by their failure to seek a confirmation order in the earlier specific performance action, and that Judge Steere improperly denied its motion to transfer the confirmation postjudgment proceedings. We find no merit in either argument. On the contrary, we find that defendant's continued ratification of the sale contract estops it from asserting the

need for a judicial confirmation order in the present proceeding. We hold further that Judge Steere properly denied defendant's motion to transfer the postjudgment proceedings on the basis of prejudice. It is well settled that an affidavit of prejudice cannot be granted after the judge complained of has made a discretionary ruling. *E.g., Burns v. Norwesco Marine, Inc.,* 13 Wn. App. 414, 416, 535 P.2d 860 (1975); *Jankelson v. Cisel,* 3 Wn. App. 139, 142–43, 473 P.2d 202 (1970). Since the receivership proceedings had been concluded for nearly 1 year when defendant's affidavit of prejudice was filed, its motion to transfer was clearly precluded by this rule.

The judgment of the trial court is affirmed.

PEARSON, A.C.J., and PETRIE, J., concur.