983 P.2d 653 (1999)
138 Wash.2d 875
KEY DESIGN INC., a Washington Corporation, Appellant,
v.
Vince L. MOSER and Joni Moser, husband and wife, and the marital community composed thereof; and Creighton Kolbeck and Jane Doe Kolbeck, husband and wife, and the marital community composed thereof, Respondents.
No. 66916-3.
Supreme Court of Washington, En Banc.
Argued March 9, 1999.
Decided September 9, 1999.
*655 Millikan & Swanson, Ronald L. Weiss, Marysville, for Appellant.
Barney Bozeman, Seattle, for Respondents.
*654 GUY, C.J.
This is an action to enforce a real estate purchase and sale agreement. We are asked to overrule our rule that a contract for the sale of real property which does not contain a correct legal description of the property violates the statute of frauds. Additionally, we consider whether we should recognize an exception to the above rule where the parties admit in court documents to a legal description of the property inadequately described in the contract. Finally, we are asked to allow the reformation of the contract in this case due to mutual mistake.
We reaffirm the rule requiring that an agreement involving a sale or conveyance of platted real property must contain a correct legal description. We do not recognize a judicial admissions exception to that rule. We hold that the record does not support reformation of the contract due to mutual mistake. We affirm the trial court's rulings.

FACTS
Vince and Joni Moser purchased the property that is the subject of this action, Vince's Fitness Center in downtown Everett, in August 1990. By mid-1996 the Mosers wanted to sell the fitness center. Mr. Moser approached Michael Miller, a patron of the center, about purchasing the gym's real and personal property. Mr. Miller was part owner and secretary of Key Design, Inc., a corporation which invested in real property. Mr. Moser and Mr. Miller negotiated the terms of the purchase of the fitness center during the last six months of 1996 and, in December 1996, Key Design presented Mr. Moser with an earnest money agreement on the real property and a purchase agreement for the gym's equipment.[1] The earnest money agreement is titled "Real Estate Purchase and Sale Agreement" and is on a pre-printed form.
The agreement is signed by Mr. Miller, on behalf of Key Design, by Joni Moser, and by Vince Moser and states in pertinent part:[2]

*656 REAL ESTATE PURCHASE AND SALE AGREEMENT (Commercial and/or Investment)

(WITH EARNEST MONEY PROVISION)

THIS IS A LEGALLY BINDING CONTRACT. READ BOTH FRONT AND BACK CAREFULLY BEFORE SIGNING.
Everett, Washington Dec 23, 1996
The undersigned Purchaser, KEY DESIGN, INC. agrees to purchase and the undersigned Seller agrees to sell, on the following terms, the property commonly known as VINCE'S FITNESS CENTER 1711 HEWITT Street in the City of EVERETT, SNOHOMISH County, Washington, legally described as (full and complete legal description must be inserted prior to execution by parties):

[Left Blank]
1. PURCHASE PRICE. The total purchase price is ONE HUNDRED FORTY THOUSAND AND NO/100 dollars ($ 140,000.00) payable as follows:

[Left Blank]
2. FINANCING. The offer [X] is [ ] is not conditioned upon Purchaser obtaining financing....
3. CONTINGENCIES. This agreement is conditioned upon A SATISFACTORY BUILDING INSPECTION (NO STRUCTURAL DEFECTS, HAZARDOUS MATERIALS, ETC), OBTAINING A PURCHASE LOAN, AND SATISFACTORY REPORTS FROM FIRE AND BUILDING DEPT.
. . . .
5. CLOSING OF SALE. This sale shall be closed on or before MARCH 14, 1997. ...
. . . .
7. POSSESSION. Purchaser shall be entitled to possession ON OR BEFORE CLOSING. ...
. . . .
12. EARNEST MONEY RECEIPT. Agent hereby receipts for earnest money in the amount of $ 500.00 from the Purchaser in the form of [ ] cash; [X] personal check; [ ] cashier's check; [ ] promissory note....
13. AGREEMENT TO PURCHASE AND TIME LIMIT FOR ACCEPTANCE. Purchaser offers to purchase the property on the above terms and conditions....
14. SELLERS' ACCEPTANCE AND BROKERAGE AGREEMENT. Seller agrees to sell the property on the terms and conditions specified herein....
Clerk's Papers at 399.
The agreement was signed by the Mosers on December 31, 1996. On the same day Key Design signed a separate agreement of purchase to buy the equipment at Vince's Fitness Center for $15,000 and put down $10,000 toward payment.
Mr. Moser testified by deposition that he considered the agreement just part of a negotiation process, not a legally binding agreement. He also was anxious to receive cash for the property and complained to Mr. Miller that he wanted to close the deal as soon as possible.
On or around February 1, 1997, Mr. Moser was approached by a second potential buyer of the property. On February 2, Mr. Moser signed an earnest money agreement, agreeing to sell the Fitness Center to Creighton Kolbeck for $185,000.
On February 3, 1997, Key Design paid the $500 earnest money due under the December 31, 1996 agreement.
In a letter dated February 13, 1997, Mr. Moser, through his (and Mr. Kolbeck's) attorney, informed Key Design that he considered the earnest money agreement executed on December 31, 1996, to be void because it did not contain a legal description of the property, and because the purchase price terms were ambiguous. Key Design responded by recording a Memorandum of Real Estate Purchase Agreement.
*657 On March 4, 1997, the Mosers closed the real estate transaction with Creighton Kolbeck. Key Design then sued the Mosers and the Kolbecks for breach of contract, reformation of contract, specific performance, to set aside the deed to Kolbeck, and for tortious interference with contractual relations or business opportunity. The complaint states that the property involved is
commonly described as Vince's Fitness Center, 1711 Hewitt, Everett, Washington, and more particularly described as:
Lots 14 and 15, Block 666, Plat of Everett, according to the plat thereof recorded in Volume 3 of Plats, Page 32, Records of Snohomish County, Washington.
Clerk's Papers at 371.
In their answer, the Mosers and Kolbecks admit to the legal description of the property as stated in the complaint.
The Mosers and the Kolbecks moved for summary judgment on all of Key Design's claims and argued that the earnest money agreement between the Mosers and Key Design was unenforceable because it violated the statute of frauds in that it failed to set forth a legal description of the property. Key Design filed a cross motion for judgment on the pleadings, arguing the judicial admissions exception to the statute of frauds should be applied in this case.
The trial court found that the earnest money agreement between the Mosers and Key Design did not satisfy the requirements of the statute of frauds and did not contain all essential terms necessary for the formation of an enforceable agreement for the purchase and sale of real property. The trial court granted the defendants' motion, dismissing all of Key Design's claims and quieting title to the property in Creighton Kolbeck. Key Design appealed directly to this court, and we accepted review.

ISSUES
1. Should this court overrule Martin v. Seigel, 35 Wash.2d 223, 212 P.2d 107, 23 A.L.R.2d 1 (1949), and hold that the statute of frauds is satisfied if an agreement for the sale of property includes a description of the property by business name, street address, city or town, county, and state?
2. Should the court recognize a "judicial admissions" exception to the Martin v. Seigel rule and hold that a description of the property by business name, street address, city or town, county, and state is sufficient to satisfy the statute of frauds if the seller admits, in court documents, that the property, as legally defined, is the same as that described in the agreement?
3. Is the agreement subject to reformation, so as to add the legal description of the property, based on mutual mistake of the parties?

ANALYSIS
Appellant Key Design asks this court to overrule Martin v. Seigel. The trial court granted summary judgment to respondents Mosers and Kolbecks because it ruled unenforceable an earnest money agreement which violated the statute of frauds by failing to include an adequate legal description of the property at issue. Key Design asserts that the rule in Martin, which requires legal descriptions in agreements involving the conveyance of real property, is harsh and outdated and produces inconsistency and uncertainty. Consequently, in Key Design's view, the rule should be limited or changed.
The statute of frauds which governs real property states: "Every conveyance of real estate, or any interest therein, and every contract creating or evidencing any encumbrance upon real estate, shall be by deed." RCW 64.04.010. Prior to Martin, a line of cases elaborated on what this and other provisions of the statute of frauds require: "In a long line of decisions, we have held that, in order to comply with the statute of frauds, a contract or deed for the conveyance of land must contain a description of the land sufficiently definite to locate it without recourse to oral testimony." Martinson v. Cruikshank, 3 Wash.2d 565, 567, 101 P.2d 604, (1940) (citing cases beginning with Rochester v. Yesler's Estate, 6 Wash. 114, 32 P. 1057 (1893)). The Martin court applied this provision to earnest money agreements and *658 further clarified the requirements of the statute:
In the interests of continuity and clarity of the law of this state with respect to legal descriptions, we hereby hold that every contract or agreement involving a sale or conveyance of platted real property must contain, in addition to the other requirements of the statute of frauds, the description of such property by the correct lot number(s), block number, addition, city, county, and state.
Martin, 35 Wash.2d at 229, 212 P.2d 107.
The rule in Martin v. Seigel has remained the law for fifty years. See also Schweiter v. Halsey, 57 Wash.2d 707, 359 P.2d 821 (1961); Lilygren v. Rogers, 1 Wash. App. 6, 459 P.2d 44 (1969); Garrett v. Shriners Hosps. for Crippled Children, 13 Wash. App. 77, 533 P.2d 144 (1975); Dunbabin v. Allen Realty Co., 26 Wash.App. 660, 613 P.2d 570 (1980); Halbert v. Forney, 88 Wash.App. 669, 945 P.2d 1137 (1997).
There is value in maintaining a well-settled rule: "we endeavor to honor the principle of stare decisis, which `promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'" Keene v. Edie, 131 Wash.2d 822, 831, 935 P.2d 588 (1997) (quoting Payne v. Tennessee, 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991)).
We will not overturn an established rule unless the party challenging it makes a clear showing that the rule is incorrect and harmful. State v. Berlin, 133 Wash.2d 541, 547, 947 P.2d 700 (1997). An example of such a showing occurred in In re Stranger Creek, 77 Wash.2d 649, 466 P.2d 508 (1970), in which we overruled two prior cases when the Department of Natural Resources showed that the holdings worked to the public detriment by destroying the benefits of the best use of the State's trust lands and that the holdings were not compelled by the state constitution. In re Stranger Creek, 77 Wash.2d at 654, 657, 466 P.2d 508. Key Design failed to utilize the established test for challenging a rule and did not present this court with an analysis of how the Martin rule was incorrect and harmful.
Key Design did present criticisms of the Martin rule which did not follow the guidelines set forth in In re Stranger Creek. Key Design complained first about the rule being extreme, unusually strict, and not generally accepted or favored, and second about its producing inconsistency and uncertainty instead of clarity. Key Design's complaints about the strictness of the rule are not new, and the Martin court itself considered and rejected them:
It will thus be seen that this court is at variance with the more liberal rule which permits parol testimony to explain what particular property the parties had in mind when they contracted to transfer real property described merely by a street number. We do not care to recede from the rule adopted by us, which has been stated in a long line of decisions over a number of years, and known and followed by the members of the bar and title men. We do not apologize for the rule. We feel that it is fair and just to require people dealing with real estate to properly and adequately describe it, so that courts may not be compelled to resort to extrinsic evidence in order to find out what was in the minds of the contracting parties.
Martin, 35 Wash.2d at 228, 212 P.2d 107.
Thus, the Martin court already recognized the strictness of the rule and declined to change it. One can gather that the court felt very strongly about its legal description requirement. 18 WILLIAM B. STOEBUCK, WASHINGTON PRACTICE, REAL ESTATE: TRANSACTIONS § 12.3.5, at 4 (Supp.1999). Furthermore, Key Design failed to show that this strictness is harmful or detrimental.
Key Design argues that the many judicially-created exceptions to the rule in Martin v. Seigel have produced uncertainty and inconsistency rather than clarity. But the existence of these exceptions, which mitigate the strictness of the rule, do not diminish the simple fact that a correct legal description will always be acceptable without further specialized knowledge of the exceptions. Moreover, Key Design proposes no alternative rule which would provide the clarity and *659 certainty it says the Martin rule lacks. Finally, Key Design's discussion of clarity and uncertainty does not demonstrate how the rule's purported lack of clarity is harmful.
In the present case, there was no uncertainty about the law's requirements. Both parties were on notice that the Martin rule applied because the preprinted form contract contained the phrase "full and complete legal description must be inserted prior to execution by parties."
Because there has been no clear showing that the rule in Martin v. Seigel is incorrect and harmful and because we wish to retain the clarity of the rule as well as consistency with prior decisions, we decline to depart from the rule enunciated in Martin.
Alternatively, Key Design asks this court to recognize a judicial admissions exception to the legal description requirement for contracts involving the sale of land. Judicial admissions are accepted in many areas of law. In the statute of frauds context, the judicial admissions doctrine allows courts to enforce oral agreements involving title to real estate as long as the party against whom enforcement is sought has admitted in court or during discovery that an oral agreement existed. Peter J. Shedd, The Judicial Admissions Exception to the Statute of Frauds in Real Estate Transactions, 19 REAL EST. L.J. 232, 232 (1991). A broader conception of the exception includes not only admissions that the contract existed but also admissions that the elements of a contract existed while not admitting to the contract itself. Smith v. Boyd, 553 A.2d 131, 133 (R.I.1989). The theory underlying the broader conception is that any admission made in legal documents may constitute a writing sufficient to satisfy the statute of frauds. 2 E. ALLAN FARNSWORTH, CONTRACTS § 6.7, at 147-48 (1998). We decline to adopt the judicial admissions exception to the Martin rule.
In the context of the statute of frauds, the judicial admissions doctrine exists as part of the Uniform Commercial Code and as judicially created in some non-U.C.C. factual settings, which often involve contracts for the sale of real property. A contract for the sale of goods which does not meet all the requirements of the statute of frauds but which is otherwise valid is enforceable "if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made." RCW 62A.2-201(3)(b). The U.C.C. limits the exception to cases in which a party admits that a contract existed.
In Washington, two Court of Appeals cases have adopted the judicial admissions doctrine as applied to real property. In Powers v. Hastings, 20 Wash.App. 837, 582 P.2d 897 (1978), aff'd, 93 Wash.2d 709, 612 P.2d 371 (1980), the court held that the defendants' admission of the existence of a lease with an option to purchase constitutes a sufficient writing or memorandum to satisfy the statute of frauds. Powers, 20 Wash.App. at 842, 846, 582 P.2d 897. Key Design, however, relies instead on the Court of Appeals decision in Sea-Van Invs. Assocs. v. Hamilton, 71 Wash.App. 537, 861 P.2d 485 (1993), rev'd, 125 Wash.2d 120, 881 P.2d 1035 (1994), a case squarely on point since it involved an earnest money agreement. The Court of Appeals in Sea-Van held that "the statute of frauds requirement of a full legal description within a contract for the sale of real property need not be met where the party claiming statute of frauds protection has admitted in court documents the legal description of the property." Sea-Van, 71 Wash.App. at 546-47, 861 P.2d 485. On review to this court, we refused to affirm the rule announced by the Court of Appeals in Sea-Van.
This court has consistently passed up opportunities to recognize the judicial admissions exception. We affirmed Powers, 93 Wash.2d 709, 612 P.2d 371, on other grounds. When reversing Sea-Van, we left the viability of the judicial admissions doctrine for another day. Sea-Van, 125 Wash.2d 120, 881 P.2d 1035. Later we were more clear that we had not adopted the doctrine: "We have not previously recognized such an exception, and do not do so here." Berg v. Ting, 125 Wash.2d 544, 562, 886 P.2d 564 (1995).
Key Design urges that we adopt the judicial admissions doctrine in this case. In the context of the rule in Martin v. Seigel, such a recognition would involve holding that *660 admissions in pleadings, depositions, or testimony may substitute for a legal description in an agreement. First, Key Design argues that this state will be bucking the modern trend in legal doctrine if we fail to recognize the judicial admissions exception. Second, it argues that the judicial admissions doctrine furthers the purpose of the statute of frauds. The purpose of the statute is to prevent a fraud, not perpetuate one, and the courts of this state are empowered to disregard the statute when necessary to prevent a gross fraud from being practiced. Powers, 20 Wash.App. at 842, 582 P.2d 897.
Key Design's claim that this court should become part of a trend by recognizing judicial admissions has several weaknesses. The trend is virtually non-existent. Although there was a trend toward recognition in the 1970s, only one state adopted a broad-based exception in the 1980s. See Shedd, supra, at 241. As of 1991, only twelve states and the District of Columbia had adopted the judicial admissions doctrine. Shedd, supra, at 243. Moreover, in some of these jurisdictions, such as Maryland (Trossbach v. Trossbach, 185 Md. 47, 42 A.2d 905 (1945); Sealock v. Hackley, 186 Md. 49, 45 A.2d 744 (1946)), Pennsylvania (Zlotziver v. Zlotziver, 355 Pa. 299, 49 A.2d 779 (1946)), and Utah (Bentley v. Potter, 694 P.2d 617 (Utah 1984)), an "admission" refers to admitting the existence of an agreement. An admission would not include admitting to a term of an agreement while denying the existence of the contract. These cases would not support the case at bench, where the seller admits the legal description but denies the existence of the agreement as a whole. Even Powers, the Court of Appeals case from our jurisdiction, based its holding on its facts, in which the defendant admitted the existence of the lease on six different occasions, 20 Wash.App. at 842, 582 P.2d 897, and only supports an admissions doctrine limited to a complete admission of the contract. In Powers, 20 Wash.App. at 842, 582 P.2d 897, the Court of Appeals cited as authority cases such as Trossbach and Zlotziver, in which defendants admitted the existence of contracts, and quoted and emphasized this excerpt from a treatise: "A complete admission in court by the party to be charged should dispense with the necessity of any writing whatever." 2 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS § 498, at 683 (1950). Finally, because the Court of Appeals case in Sea-Van has been reversed and because the Martin rule is not followed in other jurisdictions, no case supports the proposition at issue here: that a legal description of property in court documents constitutes a judicial admission sufficient to satisfy the statute of frauds.
Allowing a party to make a judicial admission while also pleading the statute of frauds does not necessarily perpetrate a fraud. The majority rule permits a defendant who admits the oral contract to insist at the same time upon the statute of frauds. 72 Am.Jur.2d § 307, at 828 (1974). The defendant is simply carrying out one of the purposes of the statute, which is to forbid the enforcement of verbal contracts for the sale of real property. See Cornett v. Clere, 193 Ky. 590, 236 S.W. 1036, 1037, 22 A.L.R. 720 (1922). Given that the statute prohibits such oral contracts, it is impossible to see how one can be bound by a contract the statute declares void. R.E.H., Annotation, Admission by Pleading of a Parol Contract as Preventing Pleader from Taking Advantage of the Statute of Frauds, 22 A.L.R. 723 (1923). The defendant is not perpetrating a fraud upon the court when he exercises his legal right under the statute. The narrower issue in the case before us presents us with analogous reasoning. The defendant who admits to the legal description of a property while pleading the statute of frauds carries out the purpose of the Martin rule, which is to encourage parties to include such proper descriptions in their contracts so that courts will not have to resort to extrinsic evidence in order to find out what was in their minds. Martin, 35 Wash.2d at 228, 212 P.2d 107. A defendant is not perpetrating a fraud upon the court when he honestly admits to the legal description while insisting that a land contract without a proper description is unenforceable under Martin.
The statute of frauds in general provides a channeling function, as well as the evidentiary function just discussed. Restatement (Second) of Contracts § 110, at 286 *661 (1981). The formal requirements of the statute for land contracts helps to create a climate in which parties often regard their agreements as tentative until there is a signed writing. Restatement, supra. Similarly in this case, Mr. Moser testified that he considered the two earnest money agreements to be part of the negotiating process. Under the Martin rule, he is entitled to consider the agreement to be tentative if it does not contain a legal description.
Finally, having affirmed the rule in Martin, which seeks to retain clarity in the formalities required for a conveyance of real property, this court would be acting in a contrary manner by also creating a new exception to that rule. Not adopting the judicial admissions doctrine is consistent with our decision to reaffirm the rule in Martin.
Accordingly, we continue to decline to adopt a judicial admissions exception to the Martin rule requiring that contracts for the sale of real property contain a legal description of the property.
Key Design argues that the failure of the parties to include the legal description was a mutual mistake, and that this Court should reform the agreement to correct that mistake.
The general rule in this state is that an inadequate legal description is not subject to reformation. Halbert, 88 Wash. App. at 673, 945 P.2d 1137; Snyder v. Peterson, 62 Wash.App. 522, 525-26, 814 P.2d 1204 (1991). However, reformation is available if the inadequate legal description is the result of a scrivener's error or a mutual mistake of the parties. Berg, 125 Wash.2d at 554, 886 P.2d 564. Conveyances of real property may be reformed on the ground of mutual mistake where such mistake is indicated by clear and convincing evidence. Lofberg v. Viles, 39 Wash.2d 493, 498, 236 P.2d 768 (1951). The evidence must show that the intention of the parties was identical at the time of the transaction and that the written agreement did not express that intention. Tenco, Inc. v. Manning, 59 Wash.2d 479, 483, 368 P.2d 372 (1962); Williams v. Fulton, 30 Wash.App. 173, 176, 632 P.2d 920 (1981). Reformation is not appropriate if the agreement expresses the intent of the parties but the legal description is merely incomplete. Williams, 30 Wash.App. at 176-77, 632 P.2d 920; Halbert, 88 Wash.App. at 673, 945 P.2d 1137.
The agreement now before the court includes a statement that a "full and complete legal description must be inserted prior to execution." The record shows that the parties intended to and did include the name of the business and street address to describe the property that was the subject of the agreement. Key Design intended to include a "proper" description of the property and was not aware that a legal description was necessary at the time of execution. Vince and Joni Moser both state that they did not intend to include a legal description because they did not believe the agreement was meant to be binding; instead, it was considered a step in the negotiation for the sale of the property.
The evidence in the record on appeal does not clearly and convincingly support a reformation of the agreement based on mutual mistake.

CONCLUSION
Since we retain the Martin rule, decline to recognize a judicial admissions exception to it, and hold the evidence does not support reformation due to mutual mistake, the absence of a legal description of the property in the agreement in this case makes that agreement unenforceable. Affirmed.
DURHAM, SMITH, JOHNSON, and IRELAND, JJ., concur.
SANDERS, J. (concurring).
I concur in the majority's result because it follows the clear holding in Martin v. Seigel, 35 Wash.2d 223, 212 P.2d 107, 23 A.L.R.2d 1 (1950) that every real estate contract must describe the property "by the correct lot number (s), block number, addition, city, county, and state." Martin, 35 Wash.2d at 229, 212 P.2d 107. However, I would prefer to overrule Martin than follow it, and therefore concur by separate opinion.
*662 Pursuant to the doctrine of stare decisis,[1] which properly aims to ensure stability and predictability in the law, we will not lightly abandon a clearly established rule. However, this doctrine admits some exceptions so as not to produce undesirable inflexibility in the law. See Planned Parenthood v. Casey, 505 U.S. 833, 866, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) ("However upsetting it may be to those most directly affected when one judicially derived rule replaces another, the country can accept some correction of error without necessarily questioning the legitimacy of the Court."). Consistent with this view of stare decisis our case law is clear that an established rule may be overturned if it is incorrect and harmful. State v. Berlin, 133 Wash.2d 541, 547, 947 P.2d 700 (1997). As the rule in Martin is both incorrect and harmful, I would abandon it.
The statute of frauds relating to real estate[2] states:
Every conveyance of real estate, or any interest therein, and every contract creating or evidencing any encumbrance upon real estate, shall be by deed....
RCW 64.04.010. The statute then outlines the requirements with which a deed must comply. RCW 64.04.020 ("Every deed shall be in writing, signed by the party bound thereby, and acknowledged by the party before some person authorized by this act to take acknowledgments of deeds." (Reviser's note omitted.)). As the word "deed" is not defined in the statute, we may look to the dictionary for assistance. State v. Bolar, 129 Wash.2d 361, 366, 917 P.2d 125 (1996). Black's Law Dictionary defines the term "deed" as "[a] conveyance of realty; a writing signed by grantor, whereby title to realty is transferred from one to another." Black's Law Dictionary 414 (6th ed.1990) (emphasis added). A "deed" is therefore a document directly affecting the legal title to a property. It does not include earnest money agreements (otherwise known as purchase and sale agreements) which are contracts pertaining to the future transfer of title to property. 18 William B. Stoebuck, Washington Practice, Real Estate: Transactions § 15.1, at 185 (1995) ("An earnest money agreement, while it contains the vendor's promise to convey title, does not itself convey title; it contemplates further action that is necessary for title to pass."); see also Rigby v. State, 49 Wash.2d 707, 710, 306 P.2d 216 (1957) ("[E]arnest-money agreements ... give no right of possession to either land or houses until the transactions are closed.").
Despite the plain language of RCW 64.04.010, which clearly applies only to actual conveyances, Martin held the statute applies to earnest money agreements as well. This holding is patently incorrect, as confirmed by prior case law:
It may be observed that these sections [Ball.Code §§ 4517 and 4518, now RCW 64.04.010 and .020] relate only to conveyances, and to contracts creating or evidencing incumbrances; they do not necessarily include agreements to convey.

Anderson v. Wallace Lumber & Mfg. Co., 30 Wash. 147, 151, 70 P. 247 (1902) (emphasis added). Furthermore earnest money agreements need not fulfill all the formalities required for deeds under RCW 64.04.020.[3]First Nat'l Bank v. Conway, 87 Wash. 506, 515, 151 P. 1129 (1915) ("In this state executory contracts for the conveyance of real property, while required to be in writing, are not specialties, but are simple contracts, valid when signed by the parties to be charged, whether or not they are executed with the formalities required for the execution of deeds.")(emphasis added); 18 Stoebuck, supra, § 12.3.5, at 4 (Supp.1999) ("[T]he supreme court has excused for contracts the formality of acknowledgement, which is expressly required in RCWA 64.04.010. Yet, the court chose to impose on contracts the requirement of a legal description, which exists only by way of a judicial gloss on the statute." (emphasis added)).
*663 Our decision in Martin was therefore clear error from its inception because it ignored the plain language of the statute of frauds and incorrectly applied the statute to earnest money agreements.
Not only is the rule in Martin incorrect, but it is also harmful because it allows the obligations of an earnest money agreement to be avoided even though both parties agreed on the terms and signed the document. In short Martin permits a party to appear to enter a contract by signing an earnest money agreement, but to avoid its legally binding effect by failing to insert the legal description mandated by Martin.
This defeats the purpose of the statute of frauds which is to prevent fraud, not promote it. Miller v. McCamish, 78 Wash.2d 821, 828, 479 P.2d 919 (1971) ("[T]here can be little question as to the intent of the legislature in the enactment of ... RCW 64.04.010. The clear purpose and intent behind [this statute] of frauds is the prevention of fraud. To apply [this statute] in such a manner as to promote and encourage fraud would be to defeat the clear and unambiguous intent of the legislature in their enactment.") (emphasis omitted); Howell v. Inland Empire Paper Co., 28 Wash.App. 494, 498, 624 P.2d 739 (1981) ("The purpose of the statute of frauds is to prevent fraud arising from uncertain agreements. We recognize that the statute of frauds should not be applied in a manner which promotes fraud.") (citations omitted); see also House v. Erwin, 83 Wash.2d 898, 903, 524 P.2d 911 (1974). The rule in Martin, which is based on the statute of frauds, contradicts not only the text but the purpose of that statute by permitting a party to avoid contractual obligations undertaken in an otherwise binding earnest money agreement.
Because Martin is both incorrect and harmful, I would overrule it. But since a majority of this court will not overrule Martin, I reluctantly concur.
MADSEN, J. (concurring/dissenting).
I agree that the earnest money agreement is unenforceable because certain material terms were omitted. I write separately to take issue with the majority's categorical refusal to apply a judicial admission exception to the rule announced in Martin v. Seigel, 35 Wash.2d 223, 212 P.2d 107, 23 A.L.R.2d 1 (1949).
In Martin, this Court overruled Thompson, Swan & Lee v. Schneider, 127 Wash. 533, 221 P. 334 (1923)[1] and stated that real property had to be described by the correct lot number, block number, addition, city, county, and state in a contract or agreement to sell or convey it. Martin, 35 Wash.2d at 229, 212 P.2d 107. While noting that this was a minority view, this Court stated: "We feel that it is fair and just to require people dealing with real estate to properly and adequately describe it, so that courts may not be compelled to resort to extrinsic evidence in order to find out what was in the minds of the contracting parties." Id. at 228, 212 P.2d 107. The concern expressed in Martin reflected the overall purpose of the statute of frauds, namely to protect the defendant against perjured testimony.
In this case, respondents Mosers and Kolbecks admitted in their answer the description of the property as stated in the complaint. At the same time, they argued that the description was inadequate under Martin and therefore the earnest money agreement should not be enforced. Under these circumstances, petitioners ask us to adopt a judicial admissions exception to the Martin rule, an exception already recognized by this Court in other contexts.
Judicial admissions, such as the admission in respondents' answer, have been defined as "stipulations by a party or its counsel that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." 2 McCormick on Evidence, *664 The Hearsay Rule and Its Exceptions § 254, at 142 (John W. Strong ed., 4th ed.1992) (emphasis added). A stipulation is "[a]n express waiver made in court or preparatory to trial by the party or his attorney conceding for the purposes of the trial the truth of some alleged fact," with the effect that "one party need offer no evidence to prove it and the other is not allowed to disprove it." 9 John Henry Wigmore, Evidence in Trials at Common Law § 2588, at 821 (James H. Chadbourn rev. ed.1981) (emphasis added).
The Fifth and Eleventh Circuit Courts of Appeals have stated, "[J]udicial admissions are proof possessing the highest possible probative value. Indeed, facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them." Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc., 713 F.2d 618, 621 (11th Cir.1983) (quoting Hill v. Federal Trade Comm'n, 124 F.2d 104, 106 (5th Cir. 1941)).
Here, because respondents Mosers and Kolbecks admitted the correctness of the description in Key Design's complaint, the need to take evidence was eliminated. It is clear what property the contracting parties had in mind when they signed the earnest money agreement. The purpose of the Martin rule, as with the statute of frauds in general, is to protect a party from having a contract enforced against it based on perjured oral evidence. Because of the judicial admission here, the need for the protection was eliminated.
In the statute of frauds context, the general judicial admissions exception "allows courts to enforce oral agreements involving title to real estate as long as the party against whom enforcement is sought has admitted in court or during discovery that the oral agreement existed." Peter J. Shedd, The Judicial Admissions Exception to the Statute of Frauds in Real Estate Transactions, 19 Real Est. L.J. 232 (1991). The logic of this exception, which has been expressly incorporated in U.C.C. § 2-201(3)(b), has been recognized by various courts. "When the contract alleged is admitted by the party charged, there is no danger of perjured evidence or other fraud on that score, and the cause of justice is disserved by allowing that party to interpose the statute as a defense." Anchorage-Hynning & Co. v. Moringiello, 697 F.2d 356, 362 (D.C.Cir.1983). The same logic applies here. Respondents Mosers and Kolbecks admitted to the correctness of the property description in the complaint, consequently there is no threat of perjured evidence from Key Design.
In Powers v. Hastings, 20 Wash.App. 837, 582 P.2d 897 (1978), aff'd, 93 Wash.2d 709, 612 P.2d 371 (1980), the Court of Appeals held that the testimony of a lessor in open court regarding the details of an oral lease with an option to purchase constituted sufficient "writings" to satisfy the statute of frauds because court testimony is "equivalent to signed depositions." Id. at 846, 582 P.2d 897. In addition, the court stated that because both parties testified as to the existence of the lease "[t]he feared uncertainty and potential for fraud, inherent in such oral agreements and which is the basis for the statute of frauds' bar against enforcement, are clearly removed by their testimony." Id.
While the case here is factually distinguishable because there is a written earnest money agreement, the same logic applies. Where parties admit the description of the property, "uncertainty and potential for fraud" are removed by that admission which is the underlying reason for the Martin rule in the first place.
Nevertheless, the majority categorically rejects the admission exception. First, the majority asserts, "This Court has consistently passed up opportunities to recognize the judicial admissions exception," noting that this Court affirmed Powers but on other grounds. Majority at 659. While it is true that this Court held there was substantial evidence so as not to sustain a judgment n.o.v., from which the jury could make its findings as to the terms, character and evidence of the contract, this Court noted there was sufficient evidence (an affidavit signed and admitted as testimony) to establish the agreement "to remove the danger of fraud arising from uncertainty, thereby excusing application of the statute [of frauds]." Powers *665 v. Hastings, 93 Wash.2d 709, 717, 612 P.2d 371 (1980).
In a case directly on point, the Court of Appeals in Sea-Van Invs. Assocs. v. Hamilton, 71 Wash.App. 537, 861 P.2d 485 (1993) rev'd on other grounds, 125 Wash.2d 120, 881 P.2d 1035 (1994) held, inter alia, that the requirement that a full legal description be included in a contract for sale of real property was met where the property description was admitted to or stipulated in court proceedings. Id. at 546-47, 861 P.2d 485. The court reasoned that because the defendants admitted the legal descriptions of the parcels in question in court documents, "the question of whether they had in mind identical parcels of land" was conclusively settled. Id. at 544, 861 P.2d 485. The court stated:
Once a legal description is alleged and admitted in court documents, ... the identity of the properties is unquestionable and can no longer be an issue of law. Moreover, the trial court may proceed "without recourse to oral testimony", one of the prime tests of whether the statute of frauds has been complied with. Bigelow [v. Mood,] 56 Wash.2d [340] at 341 [353 P.2d 429 (1960)]. While the statute of frauds generally has to be met at the time of the formation of the contract, we conclude that in circumstances where the property description is admitted to or stipulated, a party may not hide behind the statute of frauds by claiming an insufficient description in the contract. If a party were allowed to do so, the statute of frauds might well further a fraud rather than prevent one.
Id. at 545, 861 P.2d 485.
Reversing on other grounds, this Court specifically stated, "We leave the viability of the `judicial admissions' doctrine for another day." Sea-Van Invs. Assocs. v. Hamilton, 125 Wash.2d 120, 122, 881 P.2d 1035 (1994). Rather than pointing to a rejection of the doctrine, our discussion in both Powers and Sea-Van indicates theoretical approval.
Next, the majority states that to apply a judicial admissions exception to these circumstances would be inconsistent with reaffirming the rule in Martin. However, if the rationale behind the rule is to protect against perjured testimony, it is unclear how the purpose is furthered by not applying the exception. To do otherwise could contribute to fraud.
Despite the majority's reasoning that the admission by the respondents furthered the purpose of the statute of frauds and therefore should be able to assert the statute, it remains anomalous to permit respondents to admit there is no dispute about what property is at issue and at the same time assert the statute of frauds on the ground that the description is incomplete. In Roth Steel Prods. v. Sharon Steel Corp., 705 F.2d 134 (6th Cir.1983), the court stated, "The judicial admission exception to the statute of frauds represents a specific legislative response to this anomaly: no longer may a party admit the existence of a contract, or facts which may establish existence of a contract, and simultaneously claim the benefits of the statute of frauds." Id. at 142 (emphasis added). The Minnesota Supreme Court has stated:
When we recall the historical fact that the statute of frauds was originally enacted simply to prevent the frauds to which transfers of land by parol and livery of seizin lent themselves, we will readily recognize that its basic purpose is only to provide reasonable safeguards to insure honest dealing and that it was not enacted to make a fetish of literal statutory compliance or a fetish of requiring a perfect written contract.
Doyle v. Wohlrabe, 243 Minn. 107, 110, 66 N.W.2d 757 (1954). Refusing to apply a judicial admission exception where respondents have admitted in their answer to the property description does approach making a fetish of requiring a complete legal property description.
The majority is also concerned that it found no case law to support a judicial admission exception to the Martin rule. This is not surprising, however, given that the majority rule is that a street address, when accompanied only by the state and municipality, is sufficient to satisfy the statute of frauds.
Finally, the majority notes that the pre-printed form put the parties on notice that it *666 should contain a legal description, inferring that Key Design should have included a full legal description. However both parties, not just Key Design, were put on notice. Likewise, the form put both parties on notice that "THIS IS A LEGALLY BINDING CONTRACT." Majority at 656 (Real Estate Purchase and Sale Agreement). It is unclear why Mr. Moser is entitled to consider the agreement tentative merely because he testified that he considered the two earnest money agreements to be only part of a negotiating process.
While I disagree with the majority's categorical rejection of the judicial admissions exception, I concur in the result as the earnest money agreement lacked other material terms, making it unenforceable.
ALEXANDER, J., concurs.
TALMADGE, J. (dissenting).
I respectfully dissent for the reasons Justice Madsen and Justice Sanders have set forth. Their concurrences justify a dissent.
NOTES
[1] Two earnest money agreements were prepared during December 1996. The first expired before it was signed by Joni Moser. It is only the second set of agreements that is now before the court.
[2] Handwritten additions to the form are indicated by italics and underlining.
[1] Stare decisis is defined as "[t]o abide by, or adhere to, decided cases." Black's Law Dictionary 1406 (6th ed.1990).
[2] The statute of frauds relating to real estate which is found in chapter 64.04 RCW should be distinguished from the general statute of frauds contained in RCW 19.36.010.
[3] For example earnest money agreements need not be acknowledged, although deeds are required by RCW 64.04.020 to be acknowledged.
[1] See Thompson, Swan & Lee v. Schneider, 127 Wash. 533, 221 P. 334 (1923) (holding that a street address describing real property in a real estate contract was sufficient to satisfy the statute of frauds). "In all jurisdictions, except the state of Washington .... a designation of real estate by street number appears to be at least prima facie sufficient where the state and municipality (or the town) are specified in the writing." W.W. Allen, Annotation, Sufficiency of Description or Designation of Land in Contract or Memorandum of Sale Under Statute of Frauds, 23 A.L.R.2d 40 (1952).